NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE MERCK & CO., INC., SECURITIES DERIVATIVE & ERISA LITIGATION | Hon. Stanley R. Chesler<br><br>Civil Action No. 05-2369 (SRC)<br><br><br><br>**OPINION** |

### CHESLER, District Judge

**THIS MATTER** comes before the Court on four Motions to Dismiss Plaintiffs'

Consolidated Amended Class Action Complaint: (1) Motion to Dismiss Plaintiffs' Consolidated

Amended Class Action Complaint brought by Defendant Merck-Medco Managed Care, LLC

(docket #19); (2) Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint

brought by Defendants Atwater, Bossidy, Bowen, Cole, Daley, Dorsa, Elam, Frazier, Gilmartin,

Kelly, Lewent, and Merck & Co., Inc. (docket #5); (3) Motion to Dismiss Plaintiffs'

Consolidated Amended Class Action Complaint brought by Defendants Avendon, Bowles,

Exley, Fiorina, Fitzgerald, Harrison, Miller, Scolnick, Sheares, Shenk, Tatlock, Their,

Weatherstone, Weeks, and Wendell (docket #17); and (4) Motion to Dismiss the Plaintiffs'

Consolidated Amended Class Action Complaint brought by Defendant Birkin (docket #23).[1]  The

---

[1] The Court, in referring to the papers filed in the various motions being addressed in this
Opinion, will refer to papers filed in the Motion to Dismiss by Merck-Medco as "Medco Def."
papers (e.g. Medco Def. Br.), papers filed in the Motion to Dismiss by Defendants Atwater,

Court, having considered the papers submitted, for the reasons set forth below, and for good cause shown, **PARTIALLY GRANTS AND PARTIALLY DENIES** the Defendants' Motions.

## I.  BACKGROUND OF THE CASE[2]

The Plaintiffs in these consolidated cases are current participants in Merck & Co., Inc. Savings and Stock Ownership Plans (the "Plans"), and a class of all others similarly situated, during the period between October 1, 1998 through September 30, 2004 (the "Class Period"). The Plans at issue were the Merck & Co., Inc. Employee Savings and Security Plan (the "Salaried Plan"), Merck & Co., Inc. Employee Stock Purchase and Savings Plan (the "Hourly Plan"), the Merck-Medco Managed Care LLC 401(k) Savings Plan (the "Medco Plan"), and the Merck Puerto Rico Employee Savings Plan (the "Puerto Rico Plan") (collectively, the "Plans"). The Salaried and Hourly Plans were sponsored by Merck & Co., Inc. ("Merck").  The Medco Plan was sponsored by Merck-Medco Managed Care, LLC. ("Medco").  The Puerto Rico Plan was sponsored by Merck Sharp & Dohme Quimica de Puerto Rico, Inc. ("Merck Puerto Rico"), a Merck subsidiary who is not named as a defendant in this action.

---

Bossidy, Bowen, Cole, Daley, Dorsa, Elam, Frazier, Gilmartin, Kelly, Lewent, and Merck & Co., Inc. as "Merck Def." papers (e.g. "Merck Def. Def. Br."), papers filed in the Motion to Dismiss by Avendon, Bowles, Exley, Fiorina, Fitzgerald, Harrison, Miller, Scolnick, Sheares, Shenk, Tatlock, Their, Weatherstone, Weeks, and Wendell as "New Def." papers (e.g. "New Def. Def. Br.), and papers filed in the Motion to Dismiss by Def. Birkin as "Birkin Def." papers (e.g. "Birkin Def. Def. Br.").

[2] Unless otherwise noted, the recitation of the facts in this case are drawn from the allegations contained in the Plaintiffs' Consolidated Amended Class Action Complaint.

A.      **The Plans**

The Plans were defined contribution 'employee pension benefit plans,' within the meaning of ERISA.  29 U.S.C. § 1002(2)(A).  During the Class Period, the assets of the Salaried and Hourly Plans were held in trust by Fidelity Management Trust Company ("FMTC").  The assets of the Medco Plan were held in a master trust with the assets of the Salaried and Hourly Plans until December 31, 2002, when they were placed in a separate trust with FMTC in preparation for a spin-off of Medco.  The assets of the Puerto Rico Plan were held in trust by Banco Popular de Puerto Rico.

The Salaried, Hourly, and Puerto Rico Plans allowed eligible employees to contribute on both a pre-tax and after-tax basis, while the Medco Plan only permitted contributions on a pre-tax basis.  Merck offered various matching contributions into an employee's individual account, depending on the Plan.  Each of the Plans offered a variety of investment options to participants. These options included a variety of mutual funds and the Merck Common Stock Fund ("MCSF").  The MCSF invested primarily in Merck common stock.  Participants in the Plans could select the funds or other investment vehicles where their contributions would be invested. (Merck Def. Br. at Ex.1, Art. VIII, § 8.2; Id. at Ex. 2, Art. VIII, § 8.2; Id. at Ex. 3, Art. VIII, § 8.2; Id. at Ex. 4, Art. VII, § 7.1.)   During the Class Period, company matching contributions to the Salaried and Hourly Plans were invested at fifty percent in the MCSF and the remaining fifty percent as directed by the participant.[3]  (Id. at Ex. 1, Art. VIII, §§ 8.1-8.2; Id. at Ex. 2, Art. VIII, §

---

[3] Note - when a participant in the Salaried or Hourly Plans attained age fifty (50), they could direct the investment of 100% of the company matching contributions.  (Merck Def. Br. at Ex. 1, Art. VIII, § 8.1; Ex. 2, Art. VIII, § 8.1.)

8.1)  Company matching contributions to the Puerto Rico Plan were invested only in the MCSF

(id. at Ex. 3, Art. VIII, § 8.1), while company matching contributions from the Medco Plan were

invested as directed by the individual participant.  (Id. at Ex. 4, Art. VII, § 7.1.)

As the plans' sponsor, Merck was the plan administrator for both the Salaried and Hourly

Plans.  Merck Puerto Rico was the plan sponsor and administrator for the Puerto Rico Plan.

Merck was also responsible for entering into a trust agreement with a Trustee to be designated by

the company's Management Pension Investment Committee ("MPIC") for the Salaried, Hourly,

and Puerto Rico Plans.  (Id. at Ex. 1, Art. XIV, § 14.1; Id. at Ex. 2, Art. XIV, § 14.1; Id. at Ex. 3,

Art. XIV, § 14.1.)  Members of the MPIC were appointed by the Merck Board of Directors'

Compensation and Benefits Committee ("CBC").  In addition to designating a trustee, the MPIC

was responsible for determining which investments, funds, and mutual funds would be permitted

investments in the three plans.  (Id. at Ex. 1, Art. IX, § 9.1; Id. at Ex. 2, Art. IX, § 9.1; Id. at Ex.

3, Art. IX, § 9.1.)  Under the terms of all three plans, however, "a fund or investment which

includes shares of Merck Common Stock and such other investments (such as short term, liquid

investments) as determined by MPIC, shall be permitted under the Plan[s]."  (Id. at Ex. 1, Art.

IX, § 9.2; Id. at Ex. 2, Art. IX, § 9.2; Id. at Ex. 3, Art. IX, § 9.2.)

Medco was the plan sponsor and administrator for the Medco Plan.  Like the Puerto Rico

Plan, Merck was directly responsible for appointing a trustee for the Medco Plan as well.  (Id. at

Ex. 4, Art. XII, § 12.1.)  Also like the other plans at issue here, Merck's MPIC was charged with

determining the appropriate investments for the Medco Plan.  (Id. at Ex. 4, Art. VIII, § 8.1.)  The

Medco Plan also required, in addition to the other funds offered, "a fund or investment which

includes shares of Merck Common Stock and such other investments (such as short term, liquid

investments) as determined by [the] MPIC, shall be permitted under the [Medco] Plan."  (Id. at §

8.2.)  After Medco's spin-off from Merck on August 19, 2003 (Id. at Ex. 7, p9), the Medco Plan

was amended.  These amendments vested any responsibilities formerly held by Merck and

Merck's MPIC to Medco, and to Medco's MPIC.  (Id. at Ex. 4, Amend. 2003-2, § 3.)  A Medco

Fund was also added to the investment portfolio, consisting "only of Medco Shares and such

amount of short term liquid investments as determined by [Medco's] MPIC," and the MCSF was

phased out as an ongoing investment option - being permitted to remain as part of the Medco

Plan "only until the second anniversary of the Distribution date or as soon thereafter as is

administratively feasible."  (Id. at § 4.)  Additional participant contributions to the MCSF were

also discontinued with this amendment.  (Id.)


**B.      Vioxx and its Impact on the Plans' Investment Portfolio**


On or about May 20, 1999 the Food and Drug Administration ("FDA") approved Merck's

drug, Vioxx, for relief of signs and symptoms of acute pain, dysmenorrhea, and osteoarthritis.  In

a press release dated January 26, 2000, Merck referred to Vioxx as "the fastest growing

prescription arthritis and pain medicine in the United States" and to its Vioxx launch as "one of

the most successful product introductions in the pharmaceutical industry's history."  (Compl. at

46, ¶ 175.)  In March 2000, Merck received study results on its Vioxx drug which the Plaintiffs

allege "devastatingly reinforced cardiovascular safety concerns [that Merck's] employees and

consultants had repeatedly voiced for several years."  (Id. at ¶ 176.)  Merck's stock price initially

dropped when the results of this study were made public, but Merck continued to promote Vioxx.

Merck began to recommend low-dose aspirin for Vioxx patients at risk for cardiovascular disease.  At this time, Merck also launched a subsequent study of the drug, which the Plaintiffs allege "only reinforced the cardiovascular hazards of Vioxx."  (Id. at 49, ¶ 186.)  The Plaintiffs further allege that Merck had knowledge that contradicted its public statements made during this time that Vioxx was safe.  Between June 30, 2000 and December 2000, Merck's stock price rose nineteen percent, "helped by increasing sales of Vioxx."  (Id. at 54, ¶ 200.)  In 2000, Vioxx sales were $2.2 billion, making its launch "the industry's second-best ever."  (Id. at ¶ 201.) Throughout 2001, Merck continued to publicly support the cardiovascular safety of Vioxx, and rejected an FDA recommendation to add a warning of increased risk of cardiovascular thrombotic events to the drug's labeling.  As additional information about the cardiovascular risks of Vioxx began to emerge publicly, Vioxx sales began to slip, pushing Merck's profits below forecasts.  In April 2002, following negotiations with the FDA, Merck revised Vioxx's labeling to reflect the possible increased risk of heart attacks from the drug's use.  As additional studies demonstrating the potential cardiovascular risks of Vioxx continued to emerge, Merck withdrew Vioxx from the market on September 30, 2004 as a result of new study data from Merck's APPROVe study which demonstrated the increased risk of cardiovascular events in patients taking Vioxx compared to those ingesting a placebo.

Vioxx was the biggest drug, measured by sales, ever withdrawn from the market.  On the announcement of Vioxx's withdrawal from the market, Merck's stock plunged twenty seven percent that day, erasing about $26.8 billion in market value for the company.  By November 2004, the stock fell almost thirteen percent more, leaving it down thirty nine percent for the year. Some estimates of Merck's legal liabilities from injuries caused by Vioxx were as high as

eighteen billion dollars, not including potential punitive damages.  During the Class Period, the

Plaintiffs' allege that over one billion dollars in the Plans' assets were invested in the MCSF.

**C.      The Current Claims**

The Plaintiffs filed the current Amended Complaint on August 3, 2005, asserting claims

against Merck, Medco, and twenty-eight (28) individual defendants for alleged breaches of

fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

U.S.C. § 1001 *et. seq.*, with respect to the administration of the Plans.  The Defendants in this

case can be grouped into the following categories:

- Corporate defendants Merck and Medco.

- Twenty-three current or former members of the Merck Board of Directors
  ("Merck Director Defendants").  These include Defendants Gilmartin, Scolnick,
  Atwater, Birkin, Bossidy, Bowen, Bowles, Cole, Daley, Davis, Elam, Exley,
  Fiorina, Fitzgerald, Harrison, Kelly, Miller, Shenk, Tatlock, Their, Weatherstone,
  Weeks, and Wendell.

- Current or former members of Merck's MPIC ("MPIC Defendants").  These
  include Defendants Scolnick, Lewent, Avedon, Dorsa, and fictitious defendants
  John and Jane Doe 1-10.

- Current or former members of the Merck Compensation and Benefits Committee
  ("CBC Defendants").  These include Defendants Atwater, Bossidy, Bowen, Cole,
  Kelly, and Daley

- Current or former members of the Merck-Medco Board of Directors ("Medco Director Defendants").  These include Defendants Lewent and Frazier.

- Officers of Merck, including Defendant Gilmartin (Chairman of the Board and Chief Executive Officer of Merck), and Lewent (Chief Financial Officer of Merck), Frazier (General Counsel of Merck).

The Plaintiffs in this action all allege that they are current participants in one of the Plans, who invested in shares of the MCSF as part of their Plan accounts.  Plaintiff Campbell was and is a participant in the Medco Plan, Plaintiffs Climato and Smith were and are participants in the Salaried Plan, and Plaintiff Mortensen was and is a participant in the Hourly Plan.

The Plaintiffs are claiming that the Defendants breached their fiduciary duties owed to them by:

- **Count I** - Defendants who were responsible for investment of assets in the Plans failed to manage these investments prudently and loyally.  This Count is brought against Defendants Merck, Gilmartin and the MPIC Defendants;

- **Count II** - Defendants who were responsible for communicating with participants regarding the Plans and the Plans' assets failed to provide complete and accurate information.  This Count is brought against Defendants Merck, Medco, Gilmartin, Lewent, Frazier, Merck Director Defendants, MPIC Defendants, and the CBC Defendants;

- **Count III** - Defendants who were responsible for selection, removal, and monitoring of other Plan fiduciaries failed to do so properly and failed to remove or replace fiduciaries whose performance was inadequate.  This Count is brought

against Defendants Merck, Gilmartin and the Merck Director Defendants;

- **Count IV** - Defendants breached their duties and responsibilities as co-fiduciaries by failing to prevent breaches by other fiduciaries. This Count is brought against Defendants Merck, Scolnick, Gilmartin, Lewent, Frazier, MPIC Defendants, CBC Defendants, Merck Director Defendants, and Medco;

- **Count V** - Defendant Merck, to the extent that it was not a fiduciary or that it was not acting in a fiduciary capacity, knowingly participated in the breaches of fiduciary duty by Defendants who were acting in a fiduciary capacity.

## II. DISCUSSION

The Defendants have moved to dismiss the claims against them under FED. R. CIV. P. 12(b)(6). The Defendants' motions challenge the sufficiency of the Plaintiffs' Complaint to set forth a legally cognizable claim against the various Defendants for breach of fiduciary duty under ERISA. In deciding a motion to dismiss under FED. R. CIV. P. 12(b)(6), the Court must presume that all allegations in the Complaint must be taken as true and viewed in the light most favorable to the complainant. See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998). Resolution of these motions in no way indicates a predisposition by the Court of an issue of contested facts. FED. R. CIV. P. 12(b)(6). Where, as here, the Complaint at issue attaches or references various documents, the Court is not limited to reviewing the allegations set forth in the body of the Complaint in deciding a motion to dismiss. The Court may properly consider these additional materials without the need to convert the motion into one for summary judgment. See Beddall v.

State St. Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (holding court may look to materials outside the complaint in deciding a 12(b)(6) motion where the claims in the complaint "are expressly linked to-and admittedly dependent upon-a document"); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

The basis for the Plaintiffs' Complaint is the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et. seq.*, that governs employee benefit plans. "ERISA protects employee pensions and benefit plans by, among other things, 'setting forth certain general fiduciary duties applicable to the management of both pension and non-pension benefit plans.'" In re WorldCom, Inc. ERISA Litig., 263 F.Supp.2d 745, 757-58 (S.D.N.Y. 2003) (quoting Varity Corp. v. Howe, 516 U.S. 489, 496 (1996)). As a threshold matter, in order to hold a party liable for a breach of fiduciary duty under ERISA, that party must first be an ERISA fiduciary. ERISA contains a statutory definition of a fiduciary, providing that:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Under ERISA, fiduciaries are defined "in functional terms of control and authority over the plan." Mertens v. Hewitt Assocs., 508 U.S. 248, 251 (1993). The "threshold question" in an action charging breach of fiduciary duty under ERISA is "not whether the actions of some person employed to provide services under a plan adversely affected a plan

10

beneficiary's interest, but whether that person was acting as a fiduciary (that is, performing a fiduciary function) when taking the action subject to complaint."  Pegram v. Herdrich, 530 U.S. 211, 226 (2000).  Consistent with this standard, the Court will evaluate each of the Plaintiffs' claims in turn.

**A.     Count I - Breach of Fiduciary Duty for Continued Investment in Merck Securities**

Count I of the Plaintiffs' Complaint alleges that Defendants Merck, Gilmartin, and the MPIC Defendants[4] failed to "[p]rudently and [l]oyally [m]anage the Plans and Plans [a]ssets and [s]hare [m]aterial [i]nformation [w]ith [f]ellow [f]iduciaries."  (Compl. at 78, § IX(A).)  The Plaintiffs' Complaint alleges that the MPIC Defendants exercised responsibility for managing the Plans' assets "for the sole and exclusive benefit of the Plans' participants and beneficiaries, and with the care, skill, diligence, and prudence required by ERISA."  (Compl. at 78, ¶ 288.)  The Plaintiffs' argument against Defendants Merck and Gilmartin in this Count is based on their supervisory role over the MPIC which, the Plaintiffs argue, gives them *de facto* responsibility over the Plans' assets.  (Compl. at 79, ¶¶ 289-290.)

*1.     Count I of the Plaintiffs' Complaint Sufficiently States a Claim Against the MPIC*

*Defendants for Breach of Fiduciary Duty Under ERISA for Maintaining Merck Stock as*

---

[4] The Plaintiffs' Complaint identifies Defendants Scolnick and Lewent individually in this Count, as well as all the members of the MPIC, of which Scolnick and Lewent were both members.  Because the Plaintiffs' Complaint alleges liability on Scolnick and Lewent related to their responsibilities as members of the MPIC, they are included, for the purposes of this Opinion, with the other "MPIC Defendants."

*an Investment Option and Continuing to Invest Assets From the Plans Into Merck Stock.*

In determining whether a party is a fiduciary under ERISA, the Court must first examine the terms of the ERISA plan at issue. Varity Corp., 516 U.S. at 502 (1996). Responsibility for managing the investment portfolios of the Plans was delegated to the MPIC Defendants. (Merck Def. Br. at Ex. 1, Art. XIV, § 14.1; Id. at Ex. 2, Art. XIV, § 14.1; Id. at Ex. 3 Art. XIV, § 14.1; Id. at Ex. 4, Art. XIV, § 14.1.) According to the Plans' governing documents, the MPIC Defendants were responsible for designating a trustee and for determining which investments, funds, and mutual funds would be permitted investments in the Plans.[5] (Id. at Ex. 1, Art. IX, § 9.1; Id. at Ex. 2, Art. IX, § 9.1; Id. at Ex. 3, Art. IX, § 9.1; Id.. at Ex. 4, Art. VII, § 8.1.)

Despite the grant of authority to the MPIC Defendants to select investment alternatives for the Plans, the Plans all had provisions in their governing documents requiring the availability of a fund investing primarily in Merck securities. Under the Plans, "a fund or investment which includes shares of Merck Common Stock and such other investments (such as short term, liquid investments) as determined by MPIC, *shall be* permitted under the Plan[s]."[6] (Id. at Ex. 1, Art. IX, § 9.2; Id. at Ex. 2, Art. IX, § 9.2; Id. at Ex. 3, Art. IX, § 9.2; Id. at Ex. 4, Art. VIII, § 8.2) (emphasis added).)

Programs like this, which encourage employee ownership of their employer's stock, are

---

[5] Note, the MPIC Defendants' responsibilities for the Medco Plan ended when Medco was spun off from Merck in 2003. (Merck Def. Br. at Ex. 4, Art. VIII, § 8.1.) That year, responsibility for investment decisions for the Medco Plan was transitioned to the Medco MPIC (id. at Ex. 4, Amend. 2003-2, § 3), and the Merck Stock Fund began to be phased out and the Medco Stock fund was added to the plan's investment choices. (Id. at § 4.)

[6] Note that this requirement was eliminated from the Medco Plan with the 2003 spin-off of Medco and the subsequent amendments to the Medco Plan's terms.

recognized as furthering an independent and compelling Congressional objective.  See Moench v. Robertson, 62 F.3d 553, 568 (3d Cir. 1995) ("[T]he concept of employee ownership constitute[s] a goal in and of itself."); Wright v. Oregon Metallurgical Corp., 360 F.3d 1090, 1097 (9th Cir. 2004) (recognizing Congressional goal to support employee investment in their employer's stock).  These Plans, as Eligible Individual Account Plans ("EIAP"), are also granted special treatment under ERISA which exempts them from any specific statutory diversification requirements.  See 29 U.S.C. 1104(a)(2) (noting that prudence by diversification requirements are not violated by "acquisition or holding of qualifying employer securities").

Under Third Circuit law, Employee Stock Ownership Plans ("ESOPs") are entitled to judicial deference for their decisions to invest assets in the stock of the sponsoring company.  See Moench, 62 F.3d at 571.  Because ESOPs require investment in a given company's stock, they act like "a trust, where the trustee is directed to invest the assets primarily in the stock of a single company."  Id.  Under the deferential standard from Moench v. Robertson, as a general rule, fiduciaries of such ESOPs "'should not be subject to breach-of-duty liability for investing plan assets in the manner and for the purposes that Congress intended.'"  Id. (quoting Martin v. Feilen, 965 F.2d 660, 670 (8th Cir. 1992)).  Despite this general rule, however, fiduciaries of these funds are still required to "'exercise care, skill, and caution in making decisions to acquire or retain the investment.'"  Id. (quoting RESTATEMENT (THIRD) OF TRUSTS § 228, cmt. (f)).

Like a traditional ESOP, the Salaried, Hourly, and Puerto Rico Plans[7] had the stated goal

---

[7] The Plan materials indicate that the Merck Stock Fund component of the Salaried Plan was formally converted to an ESOP as of January 15, 2001.  (Compl. at 20, ¶ 67.)  The Defendants also note that the Merck Stock Fund component of the Hourly Plan began converting to an ESOP in 2003 pursuant to negotiations between Merck and the collective bargaining units whose members participate in that plan.  (Merck Def. Br., Ex. 10 at 1288.)

of "provid[ing] an opportunity for employees to become stockholders of Merck & Co., Inc."

(Merck Def. Br. at Ex. 1, Art. I, ¶ 1.1; Id. at Ex. 2, Art. I, ¶ 1.1; Id. at Ex. 3, Art. I, ¶ 1.1.)  The

Medco Plan's stated purpose, however, does not mention encouraging employee investment in

the employer's stock, but rather states only that it is to "provide an opportunity for employees to

save on a regular basis by setting aside part of their earnings."  (Id. at Ex. 4, Introduction.)  While

the Third Circuit has held that not all employee stock ownership plans are entitled to the

deferential Moench standard of review, even for decisions to invest plan funds in the sponsoring

employer's securities, the discretionary standard from Moench is properly applied to all four of

these Plans, even if they are not all considered ESOPs.

  In In re Schering-Plough Corp. ERISA Litigation, 420 F.3d 231 (3d Cir. 2005), the Third

Circuit held that the Moench standard is "inapposite" to employer-sponsored retirement plans

where the company is "'simply *permitted* to make . . . investments' in 'employer securities.'" In

re Schering-Plough Corp., 420 F.3d at 238, n.5 (quoting Moench, 62 F.3d at 571) (emphasis

added).  Unlike the plan at issue in Schering-Plough, however, the Hourly, Salaried, Puerto Rico,

and Medco (prior to the post-spinoff amendments) Plans all *required* that Merck securities be

offered as one of the investment options of the Plan.  Where an EIAP, like these Plans,

"require[s] the investment of plan funds in employer securities, just as required by an ESOP, 'it

would seem appropriate to give the same deference in either case to fiduciary decisions that

conform to the demands of the plan.'" Edgar v. Avaya, 2006 WL 1084087, *5 (D.N.J. April 26,

2006) (quoting In re Honeywell International ERISA Litig., 2004 WL 3245931, *11 n.15 (D.N.J.

June 14, 2004)).  Accordingly, this Court finds that the abuse of discretion standard from

Moench is directly applicable to the Defendants' decisions to continue offering and maintaining

investments from all four Plans in the Merck stock throughout the Class Period.

Even with the benefit of the <u>Moench</u> presumption, however, there are circumstances where such continued investment in Merck stock may indeed be a breach of the MPIC Defendants' fiduciary duties under ERISA. "Even in the context of an ESOP, which is designed to offer employees the opportunity solely to invest in the employer's stock, a fiduciary may be liable for continuing to offer an investment in the employer's securities, at least where the plaintiff can show that circumstances arose which were not known or anticipated by the settlor of the trust that made a continued investment in the company's stock imprudent, and in effect, impaired the purpose for which the trust was established." <u>In re WorldCom</u>, 263 F.Supp.2d at 764-65 (citing <u>Moench</u>, 62 F.3d at 571).

The <u>Moench</u> standard does not require fiduciaries to diversify their EIAP holdings before or after each major corporate development, "it merely requires fiduciaries to act reasonably." <u>Wright</u>, 360 F.3d at 1099. For the purposes of evaluating the Complaint under the highly deferential Fed.R.Civ.P. 12(b)(6) standard, however, the allegations in the Plaintiffs' Complaint of the adverse financial impact of Merck's withdrawal of Vioxx from the market and the potential liability for Merck for injuries attributed to Vioxx meet the threshold of "present[ing] a situation where a company's financial situation is seriously deteriorating and there is a genuine risk of insider self-dealing" sufficient to call into question the fiduciary propriety of continued investment in the Company's securities by Plan fiduciaries. <u>Id.</u> at 1098. Accordingly, the Plaintiffs have sufficiently stated a claim for breach of fiduciary duty by the MPIC Defendants in their Complaint by alleging that they were obligated to, but did not, act with prudence regarding the continued offering of Merck stock as an investment option and continuing to invest Plan

assets in Merck stock.  Therefore, the Defendants' Motion to Dismiss Count I of the Plaintiffs'

Complaint against the MPIC Defendants is **DENIED**.


2.      *The Named Plaintiffs Have Standing to Bring Claims for Breach of Fiduciary Duty*

        *Against the MPIC Defendants on Behalf of the Puerto Rico Plan.*

        In addition to their claims regarding the management of the Salaried, Hourly, and Medco

Plans, the Plaintiffs are also claiming breach of fiduciary duty related to the management of

assets in the Puerto Rico Plan.  While the named Plaintiffs in this action are current participants

of either the Hourly, Salaried, or Medco Plans, it is not claimed that any of the named Plaintiffs

are now or have ever been participants in the Puerto Rico Plan.

        Establishing individual standing is a threshold prerequisite for all civil actions.  See

O'Shea v. Littleton, 414 U.S. 488, 494 (1974); Sierra Club v. Morton, 405 U.S. 727 (1972).  "A

potential class representative must demonstrate individual standing vis-as-vis the defendant; he

cannot acquire such standing merely by virtue of bringing a class action."  Fallick v. Nationwide

Mutual Insurance, 162 F.3d 410, 423 (6th Cir. 1998) (citing Brown v. Sibley, 650 F.2d 760, 770

(5th Cir. 1981)).  The question before this Court then is whether these named Plaintiffs can

properly assert claims on behalf of the Puerto Rico Plan, even though none of them are

participants of that Plan under ERISA.

        "'[A]n individual in one ERISA benefit plan can represent a class of participants in

numerous plans other than his own, if the gravamen of the plaintiff's challenge is to the general

practices which affect all of the plans.'"  Mulder v. PCS Health Systems, Inc., 216 F.R.D. 307,

317 (D.N.J. 2003) (quoting Fallick, 650 F.2d at 422).  As class representatives, the named

Plaintiffs can represent absent class members, provided that they satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure.  Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class."  FED. R. CIV. P. 23(a).  A plaintiff can meet this requirement by showing "the presence of a single common issue."  In re Prudential Insurance Co. of America Sales Practices Litigation, 962 F.Supp. 450, 510 (D.N.J. 1997) (citations omitted).

The claims brought against the MPIC Defendants in Count One of the Plaintiffs' Complaint all arise from a single issue - did the MPIC Defendants fail to act responsibly by continuing to invest plan assets in Merck stock, and continuing to offer the MCSF as an investment option, despite the financial risks that Vioxx and its safety profile created for Merck's stock?  All four of the Plans were very similar in structure and all of them offered the MCSF as an investment option for the participants.  While the Puerto Rico Plan was a separate and distinct plan from the Hourly, Salaried, and Medco Plans, the responsibility for managing the investment options for all four Plans was assigned to the same entity, the MPIC, whose conduct is at issue in this Count.  The MPIC Defendants owed the participants of all four Plans fiduciary duties under ERISA and their actions affected all the potential class members in a similar manner - including the participants in the Puerto Rico Plan.  Accordingly, the Court finds that the Plaintiffs' can pursue the claims in Count One against the MPIC Defendants on behalf of all four Plans, including the Puerto Rico Plan.

3.      *Count I of the Plaintiffs' Complaint Does Not Sufficiently State a Claim Against Merck or Gilmartin for Breach of Fiduciary Duty Under ERISA for Maintaining Merck Stock as an Investment Option for the Plans and Continuing to Invest Assets From the Plans Into*

17

*Merck Stock*.

While the responsibility for determining the investment offerings under the Plans was delegated to the MPIC Defendants, the Plaintiffs' Complaint also alleges that Defendants Merck and Gilmartin had control over the MPIC Defendants which gave them discretionary authority and *de facto* responsibility for management of the Plans' assets and the investment decisions made by the MPIC Defendants.  (Compl. at 78-79, ¶ 289-90.)  The fact that Defendants Merck and Gilmartin retained authority over the MPIC Defendants, who were the designated fiduciaries responsible for managing the Plans' assets and investment options, however, is not sufficient to confer fiduciary responsibility on these defendants.

ERISA allows employers, like Merck, to "wear 'two hats'," one as a plan's administrator, the other as a plan's sponsor.  Blaw Knox Ret. Income Plan v. White Consol. Indus., 998 F.2d 1185, 1189 (3d Cir. 1993) (quoting Payonk v. HMW Indus., Inc., 883 F.2d 221, 225 (3d Cir. 1989)).  ERISA defines a fiduciary "in functional terms of control and authority over the plan." Mertens v. Hewitt Assoc., 508 U.S. 248, 262 (1993).  Fiduciary duties attach to the actions of an employer, "'only when and to the extent' that they function in their capacity as plan administrators."  Id.  ERISA also allows the allocation of fiduciary duties among various actors and, in most cases, liability for a breach of fiduciary duty is limited to the actor(s) to whom the responsibilities have been so allocated.  "[A] plan may expressly provide for procedures (A) for allocating fiduciary responsibilities . . . and (B) for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities."  29 U.S.C. § 1105(c)(1).

Merck is named as the Plan Administrator in the operating documents for both the Hourly and Salaried Plans.  Medco is named the Plan Administrator for the Medco Plan, and the Puerto

Rico Plan was administered by Merck Puerto Rico.  In the governing documents for all four of these Plans, however, the MPIC is expressly charged with the responsibility for determining which investments, funds, and mutual funds would be permitted investments.  (Merck Def. Br. at Ex. 1, Art. IX, § 9.1; Id. at Ex. 2, Art. IX, § 9.1; Id. at Ex. 4, Art. VIII, § 8.1.)   Merck, Medco, and Merck Puerto Rico, as the Plan Administrators, established the Plans, and their terms, and then appointed the MPIC to administer the Plans' investments.  Following such an allocation of fiduciary duties, the named fiduciary "shall not be liable for an act or omission of such person in carrying out such responsibility" unless the allocation itself was a fiduciary breach or the named fiduciary committed a co-fiduciary breach as to the allocated responsibilities.  29 U.S.C. § 1105(c)(2).

Count I of the Plaintiffs' Complaint, however, alleges a breach of duty that is beyond the appointment or retention of members of the MPIC.  Count I alleges liability for the investment decisions in the Plan and a failure to protect the Plan and its assets invested in Merck stock when information regarding the withdrawal of Vioxx went public.  This investment responsibility, however, was expressly allocated to the MPIC who was designated under the Plans' governing documents as having the authority to manage or dispose of the Plans' assets.  The question of whether, under ERISA, Merck and Gilmartin exercised authority or control over the Plan and its assets depends, therefore, on whether they actually exercised authority or control over the MPIC. As the Fifth Circuit noted:

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) (1982), states:

[A] person is a fiduciary with respect to a plan *to the extent* (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or

> control respecting management or disposition of its assets . . . or (iii)
> he has any discretionary authority or discretionary responsibility in
> the administration of such plan.
>
> (Emphasis added.)  The phrase "to the extent" indicates that a person is a fiduciary
> only with respect to those aspects of the plan over which he exercises authority or
> control.  See Brandt v. Grounds, 687 F.2d 895, 897 (7th Cir. 1982).  For example,
> if an employer and its board of directors have no power with respect to a plan other
> than to appoint the plan administrator and the trustees, then their fiduciary duty
> extends only to those functions.  See Gelardi v. Pertec Computer Corp., 761 F.2d
> 1323, 1325 (9th Cir. 1985); Leigh v. Engle, 727 F.2d 113, 133-35 (7th Cir. 1984);
> 29 C.F.R. § 2509.75-8 D-4 (1985) (Department of Labor interpretation of §
> 3(21)(A)).

Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan, 793 F.2d 1456, 1459-60

(5th Cir. 1986).

The Plaintiffs' Complaint alleges that the defined functions of the Plans' fiduciaries was

"in large measure, a formality" and that decisions, including governing investment decisions over

the Plans' assets, were "made on a routine basis by Merck's regular chain of command," which

gave Defendants Merck and Gilmartin de facto fiduciary status over the investment of the Plans'

assets.  (Compl. at 25, ¶ 87.)  This assertion alone, however, is insufficient to plead that these

defendants exercised discretionary authority over the MPIC regarding the administration or

disposition of the Plans' assets.  It is well established that, in deciding a motion to dismiss, the

Court need not "credit a [C]omplaint's 'bald assertions' or 'legal conclusions.'"  In re Burlington

Coat Factory Securities Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997) (quoting Glassman v.

Computervision Corp., 90 F.3d 617, 628 (1st Cir. 1996).  See also CHARLES ALAN WRIGHT &

ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1997) (noting that

courts, when examining 12(b)(6) motions, have rejected "legal conclusions," "unsupported

conclusions," "unwarranted inferences," "unwarranted deductions," "footless conclusions of

law," or "sweeping legal conclusions cast in the form of factual allegations").

Beyond these conclusory assertions, the only authority Defendants Merck and Gilmartin are alleged to have retained over the MPIC was the power to appoint and remove its members. These Defendants may be deemed ERISA fiduciaries with regards to management of the Plans' assets and investments *only* if it is shown that they exercised actual control over the MPIC's decisions regarding the Plans' management. Sommers Drug Stores Co., 793 F.2d at 1460. Simply because they had the power to appoint and remove members of the MPIC is not enough to plead, as the Plaintiffs attempt to in their Complaint, that they exercised the required control over the management of the Plans' assets. "To permit [such] an inference . . . would vitiate the notion of limited fiduciary responsibility established by the 'to the extent' language in ERISA § 3(21)(A)." Id. Under this view of limited fiduciary responsibility, in order to impose fiduciary responsibility for the management of the Plan's assets on Defendants Merck and Gilmartin, the Plaintiffs would need to allege that these defendants, either through the use of their positions or otherwise, caused the MPIC to relinquish their independent discretion in deciding whether to continue investing the Plans' assets into Merck securities. No such direct exercise of control over the MPIC and its actions, however, is adequately alleged in the Plaintiffs' Complaint. The claims in Count I against Defendants Merck and Gilmartin are, therefore, **DISMISSED**.

4.    *Count I of the Plaintiffs' Complaint Does Not Sufficiently State a Claim Against Defendants Merck, Gilmartin, or the MPIC Defendants for a Separate Breach of a Fiduciary Duty of Loyalty Under ERISA.*

In Count I of their Complaint, the Plaintiffs also claim that Defendants Merck, Gilmartin,

and the MPIC Defendants breached "the fiduciary duty of loyalty" by failing to "avoid conflicts

of interest and to resolve them promptly when they occur."  (Compl. at 82, ¶ 298.)  The Plaintiffs

claim that these Defendants' compensation and tenure was "tied to the performance of Merck

stock and/or the publicly reported financial performance of Merck" which created an inherent

conflict with their duty to the Plans' participants.  (Id.)  By failing to obtain independent advisors

to administer the Plans or notifying appropriate federal agencies of "the facts and circumstances

that made the [Merck Common Stock] Fund an unsuitable investment for the [P]lans" in order to

avoid adversely impacting their own compensation, the Plaintiffs claim that these defendants

placed "their own and Merck's improper interests above the interests of the participants with

respect to the Plans' investment in the [MCSF]."  (Id. at ¶ 299.)

Administering a fund that invests in company stock, as part of a company-administered

ERISA plan, requires the employer-administer to "wear two hats" and to administer the company

stock "investments consistent with the provisions of both a specific employee benefits plan and

ERISA."  Moench, 62 F.3d at 569.  As the Moench Court noted:

> [A]s the financial state of the company deteriorates, ESOP fiduciaries who double
> as directors of the corporation often begin to serve two masters. And the more
> uncertain the loyalties of the fiduciary, the less discretion it has to act.  Indeed,
> "'[w]hen a fiduciary has dual loyalties, the prudent person standard requires that he
> make a careful and impartial investigation of all investment decisions.'"  Martin v.
> Feilen, 965 F.2d 660, 670 (8th Cir. 1992) (citation omitted). As the Feilen court
> stated in the context of a closely held corporation:
>
>> [T]his case graphically illustrates the risk of liability that ESOP
>> fiduciaries bear when they act with dual loyalties without obtaining
>> the impartial guidance of a disinterested outside advisor to the plan.
>> Because the potential for disloyal self-dealing and the risk to the
>> beneficiaries from undiversified investing are inherently great when
>> insiders act for a closely held corporation's ESOP, courts should look
>> closely at whether the fiduciaries investigated alternative actions and

> relied on outside advisors before implementing a challenged
> transaction.
>
> Id. at 670-71. And, if the fiduciary cannot show that he or she impartially investigated
> the options, courts should be willing to find an abuse of discretion.

Moench, 62 F.3d at 572.  The inherent risk of dual loyalties for corporate directors and officers

who also serve as administrators for their company's stock ownership plans is to be taken into

account as a factor in applying judicial scrutiny to an administrator's decision with regard to their

management of ERISA funds.  This is not, however, a separate and distinct ERISA duty.  This is

merely a restatement of the Plaintiff's other allegations in Count I - namely that these Defendants

breached their fiduciary duty under ERISA by failing to manage the Plans in the best interests of

the Plans' participants.  Accordingly, the Plaintiffs' claims against Merck, Gilmartin, and the

MPIC Defendants for a separate breach of fiduciary duty of loyalty under ERISA are properly

**DISMISSED**.


**B.      Count II - Breach of Fiduciary Duty for Failing to Provide Complete and Accurate**
**        Information to Plan Participants and Beneficiaries**


Count II of the Plaintiffs' Complaint alleges a breach of fiduciary duty under ERISA

against Defendants Merck, Medco, Gilmartin, Scolnick, Lewent, Frazier, Merck Director

Defendants, the MPIC Defendants, and the CBC Defendants for "[f]ailure to [p]rovide

[c]omplete and [a]ccurate [i]nformation to [p]articipants and [b]eneficiaries."  (Compl. at 84.)

The crux of this count is that these defendants "breached their ERISA duty to inform participants

by failing to provide complete and accurate information, regarding the health risks that

accompanied Vioxx and the prudence of investing retirement contributions in the Fund."
(Compl. at 85, ¶ 309.)   The Plaintiffs claim that, "[h]ad such disclosures been made to
participants or Plan fiduciaries, if any, who were not aware of Vioxx health risks and the
inevitable impact of such risks on Merck's stock price, they could have taken action to protect
the Plans. [Furthermore, t]he disclosure to participants necessarily would have been accompanied
by disclosure to the market and would have assured that any further acquisitions of Merck stock
by the Plans would have occurred at an appropriate price."  (Id. at ¶ 310.)

The Plaintiffs allege that "Merck knew that, because Vioxx inhibited COX-2 but not
COX-1, use of the drug increased platelet aggregation (blood clotting) and thereby increased the
risk of heart attacks and strokes."  (Compl. at 40, ¶ 148.)  To support this allegation, the Plaintiffs
cite to Merck studies dating back to 1997 that indicate the potential cardiovascular risks of COX-
2 inhibitors like Vioxx.  (Id. at 40-41, ¶¶ 149-51.)  Despite this knowledge, the Plaintiffs allege
that Merck mislead the marketplace and understated the cardiovascular risks of Vioxx with a
series of alleged misstatements which form the basis for the Plaintiffs' allegations in Count II of
their Complaint.  These communications, in aggregate, "fostered an inaccurately rosy picture of
the soundness of the Fund[s] or Merck stock as a Plan investment."  (Id. at 74, ¶ 277.)  These
alleged misstatements include:

- A statement to the FDA's Arthritis Advisory Committee in April 1999 that "there
  is no evidence, preclinically or clinically, to suggest that rofecoxib [Vioxx] carries
  any increased risk for cardiovascular events."  (Compl. at 45, ¶ 170.)
- Two Merck press releases in November 1999 allegedly misrepresenting Vioxx's
  safety profile.  (Compl. at 45-46, ¶ 173.)

24

- Merck publicly promoting the "naproxen theory" that the differences in cardiovascular events between Vioxx and naproxen from prior clinical studies was because naproxen has a cardiovascular protective effect, which Vioxx does not - rather than attributing these events to higher risk of cardiovascular danger from Vioxx.  (Id. at 49, ¶ 186.)  This theory was promoted by the company to medical journals and members of the medical community.  (Id.)

- Altering the released data from the ADVANTAGE study to reflect three, rather than five, cardiac deaths from Vioxx - rendering the increased number not statistically significant.  (Id. at 49, ¶ 186.)

- Press release in May 2001, "reconfirming the favorable cardiovascular safety profile of Vioxx."  (Id. at 55, ¶ 204.)

- Press release in August 2001, along with "Dear Doctor" letters to physicians around the country supporting the cardiovascular safety of Vioxx in response to a study published in the Journal of the American Medical Association calling into question the cardiovascular safety of Vioxx.  (Id. at 56, ¶¶ 208-09.)

- Using a continued promotional campaign to "falsely minimize the risks and dangers associated with [Vioxx]."  (Id. at 57, ¶ 212.)

- Understating the significance of the cardiovascular risks of Vioxx in an April 2002 revision of the drug's FDA-approved labeling.  (Id. at 60, ¶ 219.)

- Publicly discounting the findings in October 2002 of two independent studies regarding the increased cardiovascular risks from Vioxx and maintaining that, in Merck's own "placebo controlled randomized trials, we have found no significant

difference between Vioxx and placebo." (Id. at 60-61, ¶¶ 220-23.)

- An August 2004 press release disagreeing with an FDA-funded observational study showing higher heart attack risks from Vioxx and stating that "Merck stands behind the efficacy and safety, including cardiovascular safety, of Vioxx." (Id. at 61-62, ¶¶ 226-28.)

In addition to the above statements made to the general public regarding Merck's Vioxx drug, the Plaintiffs also claim that Merck made "negligent misrepresentations and omissions" in numerous SEC filings that were "incorporated by reference" into Plan communications regarding the safety profile and financial risks associated with Vioxx. (Compl. at 75, ¶ 281.) These communications include 10-K, 10-Q, and 8-K Forms filed with the SEC at various times from 1998 to 2004. (Id. at 75-56, ¶ 281.) These filings were "incorporated into [the Plans'] Form S-8 registration statements, SPDs, prospectuses and/or other fiduciary communications." (Id. at 75, ¶ 279.) The Plaintiffs contend that the statements in these SEC filings were "false and misleading because they failed to disclose all the risks associated with Vioxx" by "presenting only [Merck's] positive 'spin' on [research] data while simultaneously mischaracterizing or omitting material facts which suggested significant health risks" and mischaracterized or omitted "material facts about the financial risks and potential legal liabilities created by the drug's health risks." (Id. at 76, ¶ 282.)

1. *The Specific Communications Cited to by the Plaintiffs in Their Complaint Were Not Made in an ERISA Fiduciary Capacity, and Cannot be the Sole Basis of ERISA Fiduciary Liability*

The Defendants contend that they were not acting in a fiduciary capacity when Merck made the public statements and filed the SEC disclosures that the Plaintiffs cite to as the basis for their claim that the Defendants presented false and misleading information to the Plans' participants regarding the safety profile and potential financial liabilities associated with Vioxx. ERISA liability "arises only from actions taken or duties breached in the performance of ERISA obligations." In re WorldCom, 263 F.Supp.2d at 760 (citing Pegram, 530 U.S. at 225-26). The crucial distinction here is one between "ordinary business decisions made" in a corporate capacity "which might have an adverse impact on the plan" and actions by an employer in a fiduciary capacity directed toward plan participants. Varity Corp., 516 U.S. at 505.

None of the alleged misstatements made by Merck or its officers cited to in the Plaintiffs' Complaint, regardless of their truth or falsity, were made in a fiduciary capacity regarding the Plans. See Crowley ex rel. Corning, Inc., Inv. Plan v. Corning, Inc., 234 F.Supp.2d 222, 228 (W.D.N.Y. 2002). The public statements, press releases, and other dissemination of information cited to by the Plaintiffs in their Complaint were all statements to the general public, investment community, or to potential medical prescribers of Vioxx, and not communications directed at the Plans' participants in any type of ERISA fiduciary capacity. See, e.g., In re RCN Litigation, 2006 WL 753149, *12 (D.N.J. March 21, 2006). The SEC statements, while incorporated into Plan communications, were also not made in an ERISA fiduciary capacity, and cannot be the sole basis for ERISA liability.

The Plaintiffs are attempting to leverage these communications to impose fiduciary duties under ERISA on a large group of Defendants, including Defendants Merck, Medco, Gilmartin, Scolnick, Lewent, and Frazier, as well as the Merck Director Defendants, MPIC Defendants, and

CBC Defendants.  According to the Plaintiffs' Complaint, however, only Defendants Merck and

Medco "[u]pon information and belief" were responsible for "preparing and distributing

communications to participants regarding the Plans" (Compl. at 23, ¶ 80; Id. at 26, ¶ 91.)  While

the actions of Merck, the corporate entity, are carried out by the Merck Board Defendants, the

Plaintiffs fail to allege how any fiduciary duty to communicate to participants of the Plans is

properly imposed on the MPIC or CBC Defendants.  Accordingly, the Defendants' motion to

dismiss Count II against the MPIC and CBC Defendants is hereby **GRANTED**.

The Plaintiffs' imposition of fiduciary duty to communicate with the Plans' participants

on Defendants Gilmartin, Scolnick, Lewent, and Frazier is based on the assertion that they

"determin[ed] or participat[ed] in decisions about the substantive content of Merck's SEC

filings" which were incorporated into the Plans' communications with participants."  (Compl. at

27, ¶ 98; Id. at 29, ¶ 105; Id. at 30, ¶ 110; Id. at 31, ¶ 114.)  This, however, is insufficient to

create a fiduciary duty to communicate with the Plans' participants.  "Those who prepare and

sign SEC filings do not become ERISA fiduciaries through those acts, and consequently, do not

violate ERISA if the filings contain misrepresentations."  In re Worldcom, Inc., 263 F.Supp.2d at

766-67.  The Plaintiffs are attempting to state a claim for a breach of duty under ERISA against

Defendants Gilmartin (in his capacity as CEO), Scolnick (in his capacity as EVP for Science and

Technology and President of Merck Research Labs),[8] Lewent, and Frazier where no such duty

exists.  Therefore, the Defendants' motion to dismiss Count II against Defendants Gilmartin (in

---

[8] Note, Gilmartin and Scolnick were also members of Merck's Board of Directors during
the Class Period, making them also Merck Board Defendants.  In that capacity, for the reasons
discussed *supra*, the claims in Count II of the Plaintiffs' Complaint are not dismissed against
Defendants Gilmartin or Scolnick in their capacity as members of Merck's Board of Directors.

his capacity as CEO), Scolnick (in his capacity as EVP of Science and Technology and President of Merck Research Labs), Lewent, and Frazier is hereby **GRANTED**.

2.    *The Plaintiffs' Complaint Does Not Adequately Allege a Breach of Fiduciary Duty to Communicate to Participants in the Puerto Rico Plan*

While the investment options for the Puerto Rico Plan were determined by Merck's MPIC (Merck Def. Br. at Ex. 3, Art. XIV, § 14.1), the Puerto Rico Plan was sponsored and administered by Merck Puerto Rico.[9] (Id. at Ex. 3, p 2.) As administrator of the Puerto Rico Plan, Merck Puerto Rico had the fiduciary duty to communicate with that plan's participants - not the defendants named in this Count of the Plaintiffs' Complaint. Merck Puerto Rico, however, is not named as a defendant in this action. Accordingly, the Plaintiffs' claims for breach of fiduciary duty for failure communicate to participants in the Puerto Rico Plan regarding Vioxx's safety profile is **DISMISSED**.

3.    *The Plaintiffs' Complaint Adequately Alleges That Defendants Merck, Medco, and the Merck Director Defendants Breached Their Fiduciary Duty to Communicate to Participants in the Hourly, Salaried, and Medco Plans by Failing to Disclose Adverse Information Regarding Vioxx's Safety Profile to the Plans' Participants*

Defendants Merck, Medco, and the Merck Director Defendants, however, did have a fiduciary responsibility under ERISA to communicate with the participants in the Hourly,

___

[9] The Puerto Rico Plan was part of the Merck Hourly Plan until it was spun off in July 1997, prior to the Class Period. (Merck Def. Br. At Ex. 3, p 2.)

29

Salaried, and Medco Plans.  (Compl. at 23, ¶ 80; Id. at 26, ¶ 91.)  As ERISA fiduciaries, these

defendants "may not knowingly present false information regarding a plan investment option to

plan participants.  There is no exception to the obligation to speak truthfully when the disclosure

concerns the employer's stock."  In re WorldCom, Inc., 263 F.Supp.2d at 766.  See also Martinez

v. Schlumberger, Ltd., 338 F.3d 407, 425 (5th Cir. 2003) ("When an ERISA plan administrator

speaks in its fiduciary capacity concerning a material aspect of the plan, it must speak

truthfully.");  Mullins v. Pfizer, Inc., 23 F.3d 663, 668 (2d Cir.1994) (same).  ERISA imposes a

"legal duty to disclose to the beneficiary only those material facts, known to the fiduciary but

unknown to the beneficiary, which the beneficiary must know for its own protection.  The scope

of that duty to disclose is governed by ERISA's Section 404(a), and is defined by what a

reasonable fiduciary, exercising 'care, skill, prudence and diligence,' would believe to be in the

best interest of the beneficiary to disclose."  Glaziers and Glassworkers Union Local No. 252

Annuity Fund v. Newbridge Securities, Inc., 93 F.3d 1171, 1182 (3d Cir. 1996).  See also Bins v.

Exxon Co. U.S.A., 189 F.3d 929, 939 (1999) ("We believe that once an ERISA fiduciary has

material information relevant to a plan participant or beneficiary, it must provide that information

whether or not it is asked a question."), on rehearing en banc, 220 F.3d 1042, 1048-49 (9th

Cir.2000) (when a proposed change in retirement benefits becomes sufficiently likely and

therefore material, the employer has a duty to provide complete and truthful information);

Schmidt v. Sheet Metal Workers' Nat. Pension Fund, 128 F.3d 541, 546-47 (7th Cir.1997) ("A

plan fiduciary may violate its duties . . . either by affirmatively misleading plan participants about

the operations of a plan, or by remaining silent in circumstances where silence could be

misleading."), cert. denied, 523 U.S. 1073 (1998).  "[The] duty to inform is a constant thread in

the relationship between beneficiary and trustee; it entails not only a negative duty not to

misinform, but also an affirmative duty to inform when the trustee knows that silence might be

harmful." Bixler v. Central Pa. Teamsters Health-Welfare Fund, 12 F.3d 1292, 1300 (3d

Cir.1993). See also In re Williams Companies ERISA Litig., 271 F.Supp.2d 1328, 1343

(N.D.Oka. 2003) (holding when defendants are "charged with the fiduciary responsibility to tend

to the Plan's investments" that duty encompasses a "duty to provide useful and accurate

information to Plan participants, to identify sound investment options.").

The Plaintiffs' Complaint outlines, in some detail, the importance of Vioxx to Merck's

financial well-being during the Class Period as well as a series of early trials and test results on

the drug that indicated that Vioxx may present an increased risk of cardiovascular injury for

certain patients.  (Compl. at 40-62, ¶¶ 148-228.)  The Plaintiffs claim that Defendant Scolnick, in

his role as EVP for Science and Technology of Merck, was directly aware of the early study data

regarding Vioxx's cardiovascular safety profile and, as a member of Merck's Board of Directors,

had a duty under ERISA to communicate this information to the participants of the Hourly and

Salaried Plans.  (Compl. at 68, ¶¶ 254-56.)  The Plaintiffs also claim that, as a result of the

importance of Vioxx to Merck's financial state during the Class Period, Defendants Gilmartin, as

CEO, Lewent, as CFO of Merck, and Gilmartin, as VP of Public Affairs and Deputy General

Counsel of Merck, all knew or should have known about potential issues with Vioxx's

cardiovascular safety early on in the Class Period and, by virtue of their positions on the Merck

and/or Medco Board of Directors, had a duty to communicate this information to the participants

of the Hourly, Salaried, and Medco Plans.  (Compl. at 66-67, ¶¶ 248-50; Id. at 69-70, ¶ 261; Id. at

71, ¶ 267.)  The crux of the Plaintiffs' Complaint is that, had one or more of these ERISA

fiduciaries publicly released this adverse information regarding the safety profile of Vioxx earlier, the drug would not have been a financial success, and the subsequent run-up in Merck stock would not have occurred.  Absent the inflation of Merck stock caused by the success of Vioxx, the Plaintiffs' acquisition of Merck stock during the Class Period as part of their investments in the Plans would not have been at "overvalued" prices and the Plaintiffs would not have suffered the subsequent financial loss when the stock price dropped following the withdrawal of Vioxx from the market.

The Third Circuit has held that a plan fiduciary has "'an affirmative duty to inform when the [fiduciary] knows that silence might be harmful.'"  Adams v. Freedom Forge Corp., 204 F.3d 475, 492 (3d Cir. 2000) (quoting In re Unisys Corp. Retiree Med. Benefits ERISA Litig., 57 F.3d 1255, 1262 (3d Cir. 1995), cert. denied, 517 U.S. 1103 (1996)).  The context of this affirmative duty to inform, however, has been applied to communications regarding changes to employee benefit plans, and not to communications regarding the financial state of the employing corporation.  See, e.g., Unisys Corp., 57 F.3d at 1262 (citing Fischer v. Philadelphia Elec. Co., 994 F.2d 130, 132 (3d Cir. 1993)).  The duty of disclosure under ERISA regarding the financial state of the employing corporation, however, has been aptly described as "an area of developing and controversial law." In re Enron Corp. Securities, Derivative & ERISA Litig., 284 F.Supp.2d 511, 555 (S.D.Tex. 2003).  In situations such as this, where a company has a duties under securities laws and as an ERISA fiduciary to disclose relevant information regarding the financial state of the corporation, there is the potential for significant overlap between ERISA and federal securities laws.  As some courts have noted, "[i]f the allegations of wrongdoing, including allegations of providing misinformation and failing to provide accurate information, ultimately

prove true, the Plan[s'] remed[ies] will be the same as for the plaintiff class [as they would be] in [a] related securities class action." Vivien v. Worldcom, Inc., 2002 WL 31640557, *7 -8 (N.D.Cal., July 26, 2002).

While the allegation against these defendants for failing to disclose adverse information regarding Vioxx may appear, at first impression, as an effort to present "'repackaged securities fraud claims,' for which plaintiffs have an adequate remedy in . . . securities litigation," In re CMS Energy ERISA Litig., 312 F.Supp.2d 898, 915 (E.D. Mich. 2004), the allegations do touch upon fiduciary duties surrounding disclosure found in ERISA - namely, the duty to not mislead or fail to disclose information that these defendants knew or should have known would be needed for the Plans' participants to prevent losses. Absent factual development, therefore, this claim is adequate to survive the Defendants' motion to dismiss. Accordingly, the Defendants' motion to dismiss Count II against Defendants Merck, Medco and the Merck Director Defendants is **DENIED**.

### D.      **Count III - Failure to Monitor Other Plan Fiduciaries**

Count III of the Plaintiffs' Complaint alleges a breach of fiduciary duty against Defendants Merck, Gilmartin, and the Merck Director Defendants for failing to monitor the performance of other fiduciaries. (Compl. at 86-88, ¶¶ 317-324.) The Plaintiffs' Complaint alleges that Defendant Gilmartin and the Merck Director Defendants breached their fiduciary duty to monitor the MPIC Defendants, while they allege that Defendant Merck breached its fiduciary duty to monitor both the Merck Director Defendants and the MPIC Defendants.

The Plaintiffs' Complaint notes that "[u]nder relevant New Jersey law and Merck's charter and bylaws, Merck's Board of Directors had the authority to manage the business and affairs of Merck" and that the Board "had the ultimate authority for the affairs of Merck." (Compl. at 32, ¶ 119.)  The Plaintiffs' Complaint also states that the Merck Director Defendants appointed the members of Merck's Compensation and Benefits Committee ("CBC") of the Merck Board of Directors.  (Compl. at 33, ¶ 120.)  The CBC was "composed of three or more non-employee directors of Merck.[10]"  (Id.)  The CBC, in turn, had the power to "appoint, remove and accept the resignation of members of the MPIC, who [were] named fiduciar[ies] under each of the Plans."  (Id.)  The Plaintiffs also allege that Defendant Gilmartin, in his capacity as CEO of Merck, exerted "influence over the CBC in connection with the CBC's appointment of MPIC members" including "recommending persons that the CBC should appoint to the MPIC." (Compl. at 27, ¶ 97.)

The power to appoint, retain, and remove members of the MPIC creates a fiduciary duty under ERISA to monitor the MPIC.  See Hickman v. Tosco Corp., 840 F.2d 564, 566 (8th Cir. 1988) ("Tosco is a fiduciary within the meaning of ERISA . . . because it appoints and removes the members of the administrative committee that administers the pension plan.");  Sommers Drug Stores Co., 793 F.2d at 1459-60;  Leigh, 727 F.2d at  133-35; Edgar, 2006 WL 1084087 at *11 (finding ERISA duty to monitor other fiduciaries "imposed as an implicit duty upon those who have the power to appoint and remove other fiduciaries") (citations omitted); In re RCN Litigation, 2006 WL 753149 at *9 (power to appoint, retain, and remove plan fiduciaries makes

---

[10] During the Class Period, the following Merck Director Defendants were members of the CBC: Defendants Atwater, Bossidy, Bowen, Cole, Kelly, and Daley.  (Compl. at 33, ¶ 121.)

one a fiduciary under ERISA); In re Cardinal Health ERISA Litig., 424 F.Supp.2d 1002, 1047

(S.D.Ohio 2006) ("[T]he ERISA statutory scheme imposes upon fiduciaries a duty to monitor

when they appoint other individuals to make decisions about the plan"); In re Electronic Data

Systems Corp. ERISA Litig., 305 F.Supp.2d 658, 670 (E.D.Tex. 2004) ("ERISA law imposes a

duty to monitor appointees on fiduciaries with appointment power"); In re Enron Corp., 284

F.Supp.2d at 661 (same) (citing Coyne & Delany Co., 98 F.3d at 1464-65 ("the power . . . to

appoint, retain and remove plan fiduciaries constitutes 'discretionary authority' over the

management or administration of a plan within the meaning of § 1002(21)(A)"); Detroit

Terrazzo Contractors Ass'n v. Board of Trustees of B.A.C. Local 32 Ins. Fund, 176 F.Supp.2d

733, 739-40 (E.D.Mich. 2001); ERISA Interpretive Bulletin 75-8, 29 C.F.R. § 2509.75- 8 (D-4)

(members of a board of directors "responsible for the selection and retention of plan fiduciaries"

have "'discretionary authority or discretionary control respecting the management of such plan'

and are, therefore, fiduciaries with respect to the plan."). The power to appoint fiduciaries is

itself a fiduciary function. Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1465 (4th Cir. 1996);

Mehling v. New York Life Ins. Co., 163 F.Supp.2d 502, 509-10 (E.D.Pa. 2001). Implicit in this

power is the duty to monitor. Leigh, 727 F.2d at 134-35; 29 C.F.R. § 2509.75-8, FR-17. "The

duty to monitor carries with it . . . the duty to take action upon discovery that the appointed

fiduciaries are not performing properly." Liss v. Smith, 991 F.Supp. 278, 311 (S.D.N.Y.1998).

 The ability to appoint and remove members of the MPIC was expressly delegated to the

CBC, not to the entire Board of Directors. The members of the Merck Board who were not also

members of the CBC during the Class Period, therefore, did not have a fiduciary duty under

ERISA to monitor the activities of the MPIC. Accordingly, the Defendants' Motion to Dismiss

Count III against the Merck Director Defendants who were not also members of the CBC during

the Class Period, namely Defendants Scolnick, Birkin, Bowles, Davis, Elam, Exley, Fiorina,

Fitzgerald, Harrison, Miller, Shenk, Tatlock, Their, Weatherstone, Weeks, and Wendell, is

**GRANTED**.

Those members of Merck's Board of Directors who did serve on the CBC during the

class period, however, had a fiduciary duty to monitor the MPIC in its management of the assets

of the Plans.  These CBC Defendants are Defendants Atwater, Bossidy, Bowen, Cole, Kelly, and

Daley.  It is also sufficiently alleged that Defendant Gilmartin had a *de facto* fiduciary duty to

monitor the MPIC as a result of his exercise of direct influence over the CBC in the appointment

of MPIC members.  Because, for the reasons noted above, the Plaintiffs' Complaint sets forth a

sufficient claim against the MPIC Defendants for breach of their fiduciary duties, the Complaint

also sets forth a cognizable claim against the CBC Defendants and Defendant Gilmartin for

failure to supervise the MPIC Defendants in the performance of their duties.  Therefore, the

Defendants' Motion to Dismiss Count III against Defendants Atwater, Bossidy, Bowen, Cole,

Kelly, Daley, and Gilmartin is **DENIED**.

The Plaintiffs' Complaint also alleges a breach of fiduciary duty by Defendant Merck for

failure to adequately supervise the activities of the MPIC and the Board of Directors during the

Class Period.  As noted above, the responsibility to appoint and remove members of the MPIC,

as well as the ERISA fiduciary duty to monitor the MPIC, was expressly delegated to the CBC

Defendants.  With respect to the responsibility of Merck to monitor the activities of the Board of

Directors, the traditional role of a corporate board is to "'oversee' or 'monitor' the conduct of the

corporation's business and to approve major corporate plans and actions" – not the other way

around.  Bins, 220 F.3d at 1051 (citing American Law Inst., *Principles of Corporate Governance: Analysis and Recommendations*, §§ 3.01, 3.02(a)(1)-(2) (1994)).  Accordingly, the Defendants' Motion to Dismiss Count III against Defendant Merck is **GRANTED**.


E.      **Count IV - Co-Fiduciary Liability**

Count IV of the Plaintiffs' Complaint alleges that Defendants Merck, Medco, Gilmartin, Scolnick, Lewent, Frazier, the Merck MPIC Defendants, and the Merck Director Defendants breached their co-fiduciary liability to the Plans' participants by:

- Not communicating "their knowledge of the Company's illegal activity to the other fiduciaries" (Compl. at 89, ¶  329);

- Withholding material information and providing "the market with misleading disclosures" (Id. at ¶ 330);

- Failing to undertake any effort to remedy known breaches of fiduciary duty by the Defendants who imprudently continued to invest the Plans' assets in Merck securities and provided incomplete and misleading communications to the Plans' participants (Id. at 90, ¶ 332);

- Defendant Merck "knowingly participated in the fiduciary breaches" of the Defendants who imprudently continued to invest the Plans' assets in Merck securities because it "benefitted from the sale or contribution of its stock at artificially inflated prices" and participated as a *de facto* fiduciary in this breach because it "participated in all aspects of the fiduciary breaches of the other Defendants, which it controlled" (Id. at ¶ 333);

37

- Defendants Gilmartin, Scolnick, Lewent, and Frazier knowingly "participated in the breaches of" the fiduciaries who imprudently invested the Plans' assets in Merck securities and provided incomplete and misleading communications to the Plans' participants by "having actual knowledge of the Company's misrepresentations and nondisclosures regarding the health risks of Vioxx and the impact such disclosure would have on [Merck's] stock price" but still permitting these other fiduciaries "to breach their duties" (Id.);

- Defendants Merck, Medco, Gilmartin, Lewent, Frazier, Merck Director Defendants, and the Merck MPIC Defendants enabled the breaches of the Merck MPIC Defendants by failing "to provide complete and accurate information to the MPIC or the participants that would have protected the Plans and Plan participants from harm" (Id. at 91, ¶ 335);

- Defendants Merck, Gilmartin, and the Merck Director Defendants failed to monitor the Merck Director Defendants and the Merck MPIC Defendants, enabling them to breach their duties. (Id. at ¶ 336.)

Section 405(a) of ERISA recognizes that a fiduciary may be liable for breaches of duty committed by other fiduciaries:

> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a).   Many of the specific allegations included in this Count are largely

duplicative of the allegations brought in other Counts of the Plaintiffs' Complaint.  Absent the

opportunity for additional factual development to determine whether the named defendants in

this Count knew of the alleged breaches of fiduciary duty by their co-fiduciaries, and the extent

to which their own actions may have enabled their co-fiduciaries to breach their duties to the

Plans' participants, however, the allegations in this Count that relate directly to potential co-

fiduciary liability for these named defendants are sufficient to survive the Defendants' motion to

dismiss.  Accordingly, the Defendants' Motion to Dismiss Count IV is **DENIED**.


**F.**      **Count V - Knowing Participation in a Breach of Fiduciary Duty**

Count V of the Plaintiffs' Complaint alleges that Defendant Merck, to the extent that it is

found not to be a fiduciary or not to have been acting in a fiduciary capacity under ERISA,

"knowingly participated in the breaches of those Defendants who were fiduciaries and acted in a

fiduciary capacity."  (Compl. at 91, ¶ 341.)  Count IV of the Plaintiffs' Complaint, however, has

almost identical allegations in its assertion of co-fiduciary liability against Defendant Merck in

its claim that Defendant Merck "knowingly participated" in the fiduciary breaches of "the other

Defendants, which it controlled."  (Compl. at 90, ¶ 333.)  Because this Count is essentially

duplicative of the claims raised in Count IV, the Defendants' Motion to Dismiss Count V of the

Plaintiffs' Complaint is **GRANTED**.


**III.   CONCLUSION**

For the reasons stated above, and for good cause shown, the Court **PARTIALLY**

**GRANTS AND PARTIALLY DENIES** the Defendants' Motions to Dismiss pursuant to Rule

12(b)(6) for failure to state a claim upon which relief can be granted.  An appropriate form of order will be filed herewith.

Date:   July 11, 2006

         s/Stanley R. Chesler

        Stanley R. Chesler, U.S.D.J.

40