**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| IN RE MERCK & CO., INC. SECURITIES, DERIVATIVE & "ERISA" LITIGATION | : : : : | **MDL No. 1658 (SRC)** |
| _____ | : : | **Civil Action No. 05-1151 (SRC)** **Civil Action No. 05-2369 (SRC)** |
| THIS DOCUMENT RELATES TO: THE CONSOLIDATED ERISA ACTION | : : : : : | **OPINION** |

**CHESLER**, District Judge

      This matter comes before the Court upon the motion for class certification (Docket Entry No. 105), pursuant to Fed. R. Civ. P. 23, by Plaintiffs Cynthia Campbell ("Campbell"), Robert Cimato ("Cimato"), and Blossom Smith ("Smith") (collectively, "Plaintiffs").[1]  Merck & Co., Inc. ("Merck"), various individual Merck defendants,[2] and Merck-Medco Managed Care, LLC ("Merck-Medco") (collectively, "Defendants") oppose this motion.  Pursuant to Federal Rule of Civil Procedure 78, the Court rules on this motion based on the papers submitted by the parties. For the reasons that follow, Plaintiffs' motion will be granted in part and denied in part.

_____

    [1] Robert Mortenson, a Plaintiff named in the Amended Complaint, has withdrawn from this case.

    [2] These individual defendants are as follows: H. Brewster Atwater, Jr., Marcia J. Avedon, Derek Birkin, Lawrence A. Bossidy, William G. Bowen, Erskine B. Bowles, Johnnetta B. Cole, William M. Daley, Caroline Dorsa, Lloyd C. Elam, Charles E. Exley, Jr., Carleton S. Fiorina, Niall FitzGerald, Kenneth C. Frazier, Raymond V. Gilmartin, William B. Harrison, Jr., William N. Kelley, Judy C. Lewent, Heidi G. Miller, Bradley T. Sheares, Thomas E. Shenk, Anne M. Tatlock, Samuel O. Thier, Dennis Weatherstone, Wendell P. Weeks and Peter C. Wendell.

## BACKGROUND

The Plaintiffs in these consolidated cases are participants in various retirement benefit plans, seeking to represent a class of all others similarly situated, during the period between October 1, 1998 through September 30, 2004 (the "Class Period").  The plans at issue are the Merck & Co., Inc. Employee Savings and Security Plan, Merck & Co., Inc. Employee Stock Purchase and Savings Plan, and the Merck-Medco Managed Care LLC 401(k) Savings Plan (collectively, the "Plans").  The Plans are defined contribution benefit plans.

In brief, this dispute concerns claims that Plan participants incurred losses in their individual accounts due to artificial inflation of the value of Merck stock, and that such losses were caused by Defendants' breach of fiduciary duties owed to Plaintiffs under the Employment Retirement Income Security Act ("ERISA").  Plaintiffs allege inflation of the value of Merck stock in connection with Merck's sale of the drug Vioxx.

Plaintiffs' Consolidated Amended Class Action Complaint (the "Amended Complaint") alleges four causes of action, all asserting liability to restore losses to the Plans, pursuant to ERISA §§ 409, 502(a)(2) and (a)(3): 1) failure to prudently and loyally manage the Plans (the "prudence claim"); 2) failure to provide complete and accurate information (the "communications claim"); 3) failure to monitor fiduciaries; and 4) co-fiduciary liability.  A fifth cause of action was dismissed on July 11, 2006, when this Court granted in part and denied in part Defendants' motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6).  Further details about the background of this case may be found in this Court's Opinion of that date.

Plaintiffs now ask this Court to certify a class, pursuant to Fed. R. Civ. P. 23, defined as follows:

2

All persons, other than Defendants, who were participants in, or beneficiaries of, the Merck & Co., Inc. Employee Savings & Security Plan [], the Merck & Co., Inc. Employee Stock Purchase & Savings Plan [], the Merck Puerto Rico Employee Savings & Security Plan [] and the Merck-Medco Managed Care, LLC 401(k) Savings Plan [] (collectively the "Plans") at any time between October 1, 1998 and September 30, 2004 and whose Plan accounts invested in the Merck Common Stock Fund and/or Merck common stock.

(Pls.' Br. 1.)

## ANALYSIS

**I.      Legal Standard**

  A.      Class certification under Rule 23

  The party seeking class certification bears the burden of proving that the action satisfies the requirements of Federal Rule of Civil Procedure 23.  See Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994).  To satisfy this burden, plaintiff must meet the four requirements of Rule 23(a) and qualify under one of the provisions within Rule 23(b).  FED. R. CIV. P. 23.  The Court must accept the substantive allegations of the complaint as true, Chiang v. Veneman, 385 F.3d 256, 262 (3d Cir. 2004), and conduct a "rigorous analysis" of the Rule 23 prerequisites.  In re Hydrogen Peroxide Antitrust Litig., 2008 U.S. App. LEXIS 26871 at *9 (3d Cir. Dec. 30, 2008) (quoting General Telephone Co. v. Falcon, 457 U.S. 147, 161 (1982)).  "[A] class may not be certified without a finding that each Rule 23 requirement is met."  Id. at *11.  A class certification order must clearly set forth "the precise parameters defining the class and a complete list of the claims, issues, or defenses to be treated on a class basis."  Wachtel v. Guardian Life Ins. Co. of Am., 453 F.3d 179, 185 (3d Cir. 2006); see FED. R. CIV. P. 23(c).

  Rule 23(a) states these requirements for class certification:

  (1) the class is so numerous that joinder of all members is impracticable;

3

(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

These requirements are generally referred to as the numerosity, commonality, typicality, and

adequacy requirements.

Rule 23 also requires that the class qualify under one provision within subdivision (b).

Plaintiffs seek certification under 23(b)(1), which provides for certification if:

prosecuting separate actions by or against individual class members would create a risk of:
(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

The Third Circuit has recently clarified "three key aspects of class certification

procedure:"

First, the decision to certify a class calls for findings by the court, not merely a 'threshold showing' by a party, that each requirement of Rule 23 is met. Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence. Second, the court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits – including disputes touching on elements of the cause of action. Third, the court's obligation to consider all relevant evidence and arguments extends to expert testimony, whether offered by a party seeking class certification or by a party opposing it.

Peroxide, 2008 U.S. App. LEXIS 26871 at *3.

## II.    Plaintiffs' motion for class certification

As an initial matter, Defendants contend that the motion for class certification should be

denied for late filing.  Plaintiffs respond that the filing deadline established by the Court's Initial

Case Management Order was effectively modified by the subsequent Orders staying deposition

discovery.  Defendants' September 27, 2007 letter to the Court, discussing the timing of

deposition discovery in preparation for the motion for class certification, clearly contemplates

that these events are in the future and, indeed, seeks changes to the discovery schedule antecedent

to the motion for class certification.  (See, e.g., Baron 9/27/07 Letter at 6.)  Plaintiffs filed this

motion for class certification on October 19, 2007, less than three weeks later.  Having implied

their consent to the future filing of the motion for class certification in September of 2007,

Defendants will not be heard now to object to the timeliness of this filing.  Furthermore,

Defendants do not even suggest that they have been prejudiced by any delay.

      A.    Count II: the communications claim

      The parties' briefs regarding Plaintiffs' motion for class certification focus on two claims:

the prudence claim and the communications claim.  Defendants argue that class certification

should not be granted for the communications claim because adjudication of that claim requires

individualized determinations, precluding finding sufficient typicality under Rule 23(a)(3).  This

Court agrees.

      The gist of the communications claim is that Defendants failed to disclose complete and

accurate information to Plan participants regarding Vioxx and the prudence of investing in Merck

stock and the Merck Common Stock Fund ("MCSF"), which caused Plan participants to acquire

the stock at inflated prices and, subsequently, to incur losses when the stock price dropped.

Plaintiffs assert causes of action pursuant to ERISA §§ 502(a)(2) and 502(a)(3).  (Compl. ¶ 314.)

Defendants contend that detrimental reliance on the misrepresentations or omissions is a

necessary element of this claim.  Plaintiffs respond with two arguments: 1) individual reliance is irrelevant because the "[t]he aggrieved parties here are the Plans, not the individual Participants" (Pls.' Reply Br. 2); and 2) reliance is presumed.

     1. *Are the Plans the aggrieved parties?*

   Plaintiffs' first argument overlooks the fact that the Amended Complaint asserts the communications claim pursuant to both ERISA §§ 502(a)(2) and 502(a)(3).  As will be discussed further below, it is well-settled in the Third Circuit that, under § 502(a)(3), Plaintiffs must prove loss and detrimental reliance on an individual basis.  Thus, consideration of Plaintiffs' first argument is limited to that aspect of the communications claim asserted under § 502(a)(2).

   The argument that the aggrieved parties here are the Plans suffers from a fundamental confusion about the legal relations between the fiduciaries, the plan, and the participants, in the context of a defined contribution plan.  It is telling that Plaintiffs' first citation in support of their argument is to <u>Mass. Mut. Life Ins. Co. v. Russell</u>, 473 U.S. 134, 140 (1985).  One of the main points made by the Supreme Court in <u>LaRue v. DeWolff, Boberg & Assocs.</u>, 128 S. Ct. 1020 (2008), is to correct the misapplication of the "entire plan" language of <u>Russell</u> to cases involving defined contribution plans.  In <u>LaRue</u>, the Supreme Court began with a review of <u>Russell</u> and observed that <u>Russell</u> understood §§ 409 and § 502(a)(2) to deal primarily "with remedies that would protect the entire plan, rather than the rights of an individual beneficiary."  <u>LaRue</u>, 128 S. Ct. at 1025 (quoting <u>Russell</u>, 473 U.S. at 142.)  The Court then stated:

> Russell's emphasis on protecting the 'entire plan' from fiduciary misconduct reflects the former landscape of employee benefit plans. That landscape has changed.
>
> Defined contribution plans dominate the retirement plan scene today.

Larue, 128 S. Ct. at 1025.  The Court explained:

> Whether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts, it creates the kind of harms that concerned the draftsmen of § 409.  Consequently, our references to the 'entire plan' in *Russell*, which accurately reflect the operation of § 409 in the defined benefit context, are beside the point in the defined contribution context.

Id.

The Court further observed that the phrase "entire plan" appeared nowhere in § 409 or § 502(a)(2), and held that it did not apply to defined contribution plans.  Id.  Moreover, the Court pointed out that § 404(c) would serve no purpose if "fiduciaries never had any liability for losses in an individual account."  Id. at 1026.  The Court concluded: "We therefore hold that although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account."  Id.  The Supreme Court thus rejected the position that only a plan, and not an individual, could be an aggrieved party in a suit pursuant to § 502(a)(2).

In the instant case, Plaintiffs argue that the aggrieved parties are the Plans, not the individual participants.  This was the position that the Fourth Circuit took when it dismissed LaRue's case.[3]  Vacating that decision, the Supreme Court made clear that Mr. LaRue, as an individual, was an aggrieved party.

Moreover, particularly in the context of the communications claim, it makes no sense to

---

[3] In dismissing Larue's suit seeking a remedy for an injury to his individual plan account, the Fourth Circuit had expressed skepticism that "plaintiff's individual remedial interest can serve as a legitimate proxy for the plan in its entirety."  450 F.3d at 574.  The Supreme Court rejected the Fourth Circuit's imposition of an "entire plan" requirement on suits pursuant to § 502(a)(2) pertaining to an individual account in a defined contribution plan.  128 S. Ct. at 1025.

cast the Plan as the aggrieved party.  Communications occur between people: in this context, between the fiduciaries and the participants.  Plaintiffs contend that the fiduciaries failed to communicate the information, and participants thus did not have the information: "[A]s a consequence of the failure to the Communications Defendants to satisfy their duty to provide complete and accurate information under ERISA, participants lacked sufficient information to make informed choices regarding investment of their retirement savings in the Fund."  (Am. Compl. ¶ 311.)  The reply brief argument that the dispute over communications is actually between the fiduciaries and the Plan is untenable.  Neither is Plaintiffs' suggestion that "Plaintiffs' misrepresentation/omission claims concentrate on Defendants' fiduciary breaches, not Participants' action."  (Pls.' Reply Br. 2 n.2.)  These arguments do not accurately reflect the theory Plaintiffs have advanced in the Amended Complaint.

> **2.**     *Is reliance presumed?*

Plaintiffs contend that under basic trust law, upon which ERISA is based, the trust beneficiary is presumed to have relied on misrepresentations to his detriment.  Not one of the citations offered by Plaintiffs in support (Restatement (Second) of Trusts § 216 (1959); Finley v. Dun & Bradstreet Corp., 471 F. Supp. 2d 485, 496 (D.N.J. 2007); In re Xcel Energy, Inc., 312 F. Supp. 2d 1165, 1183 (D. Minn. 2004); and In re AEP ERISA Litig., 327 F. Supp. 2d 812, 833 (S.D. Ohio 2004)) actually stands for this proposition.  Even in cases in which district courts have granted class certification for ERISA stock drop communications claims, the finding of typicality has not been based on a presumption of reliance.  See, e.g., In re Schering-Plough Corp. Erisa Litig., 2008 U.S. Dist. LEXIS 89718 at *20 (D.N.J. Jan. 31, 2008).

Plaintiffs next ask this Court to transfer the principles of securities law to ERISA cases

and presume reliance from materiality.  This is a big leap, and plaintiffs offer just one case in

support: <u>In re Tyco Int'l, Ltd. Multidistrict Litig.</u>, 2006 DNH 91 at *26-*27 (D.N.H. 2006).

Indeed, that district court held exactly as Plaintiffs contend.  <u>Id.</u>  In the absence of any controlling

authority, this Court is not persuaded that principles of securities law apply in ERISA cases.[4]

Rather, as Judge Easterbrook explained in a recent opinion, the distinction between the two

bodies of law should be carefully observed:

> First, this is not a securities suit.  It is an action against fiduciaries of a pension
> plan.  To prevail, the participants must show that defendants breached the duties
> they owed as fiduciaries of pension funds, not whatever duties Baxter and its
> managers owed to investors at large.  The sets of potentially responsible parties
> overlap only incidentally.  The defendants in securities actions are those who
> made the fraudulent statements to the public or caused them to be made; the
> defendants in this action are those empowered to take decisions on behalf of the
> pension plan.  Pension fiduciaries are liable, or not, depending on what they know
> and what duties they have under trust law; that Baxter may have tried to deceive
> investors as a whole would not translate directly to liability for trustees of
> Baxter's pension plan.

<u>Rogers v. Baxter Int'l Inc.</u>, 521 F.3d 702, 705 (7th Cir. 2008).

As to the question of whether detrimental reliance must be proven for Plaintiffs to prevail

on the § 502(a)(2) communications claim, no Third Circuit case is directly on point.  The case

law, as a whole, however, suggests that detrimental reliance must be individually proven on a

claim under § 502(a)(2).  It is clear that claims for beach of fiduciary duty by misrepresentation

---

[4] The use of securities law to decide an ERISA case opens the proverbial can of worms.
For a survey of the many differences between the two areas of law in regard to ERISA
nondisclosure claims, <u>see</u> Clovis J. Trevino Bravo, <u>ERISA Misrepresentation and Nondisclosure
Claims: Securities Litigation under the Guise of ERISA?</u>, 26 Hofstra Lab. & Emp. L.J.
(forthcoming 2009).

under § 502(a)(3) require proof of detrimental reliance.  Hooven v. Exxon Mobil Corp., 465 F.3d

566, 571 (3d Cir. 2006); Burstein v. Ret. Account Plan for Emples. of Allegheny Health Educ. &

Research Found., 334 F.3d 365, 384 (3d Cir. 2003).  Two pre-LaRue § 502(a)(3) cases, Horvath

v. Keystone Health Plan E., Inc., 333 F.3d 450, 456 (3d Cir. 2003), and In re Unisys Sav. Plan

Litig., 173 F.3d 145, 158-159 (3d Cir. 1999), are particularly relevant.  In Horvath, the Third

Circuit stated that, as to a claim for equitable relief pursuant to § 502(a)(3) for breach of the

fiduciary duty of disclosure, the "requests for restitution and disgorgement [] are individual in

nature and therefore require her to demonstrate individual loss."  333 F.3d at 456.  The Horvath

Court cited to this language in Unisys:

> A fiduciary must make disclosures if silence would be harmful.  ERISA also
> requires plaintiffs to prove losses for any breach of fiduciary duty claim:
>
> > Any person who is a fiduciary with respect to a plan who breaches
> > any of the responsibilities, obligations, or duties imposed upon
> > fiduciaries by this subchapter shall be personally liable to make
> > good to such plan *any losses* to the plan resulting from each such
> > breach.
>
> 29 U.S.C. § 1109(a) (emphasis added). As Meinhardt and the other class plaintiffs
> were seeking individual relief under 29 U.S.C. § 1132(a)(3) (in contrast to §
> 1132(a)(2), which only allows relief on behalf of the Plan), Meinhardt was
> required to prove individual losses.

Unisys, 173 F.3d at 158-159 (citations omitted).

Horvath and Unisys, at the very least, leave the door open to the argument that, while a

suit for losses under § 502(a)(3) requires proof of individual losses, suits for losses under §

502(a)(2) may not have such a requirement.  There is reason to conclude that LaRue has closed

the door to this argument, which appears to rely on the "entire plan" requirement of Russell that

was found to be "beside the point in the defined contribution context."  LaRue, 128 S. Ct. at

10

1025.  After LaRue, it is no longer correct to say, as in Unisys, that § 502(a)(2) "only allows

relief on behalf of the Plan."  Unisys, 173 F.3d at 159.  Because LaRue recognizes that

individuals may seek to remedy losses to their individual plan accounts under § 502(a)(2), such

individual plaintiffs should be required to prove individual losses for claims under § 502(a)(2), as

they are for claims under § 502(a)(3).

This conclusion is supported by In re Schering-Plough Corp. ERISA Litig., 420 F.3d 231,

235 (3d Cir. 2005), in which this statement appears in dicta: "Plaintiffs may have to show

individual reliance on the defendants' alleged misrepresentations to prevail on some claims."

Schering involved a claim for breach of fiduciary duty under §§ 409 and 502(a)(2), including a

claim for beach of the duty to provide complete and accurate information about the company

stock.  Although the question of whether detrimental reliance was a necessary element was not

before the Third Circuit, the discussion suggests that the Court had moved toward recognizing

the individual character of some suits under § 502(a)(2).  See Schering, 420 F.3d 235-236.  In

sum, Third Circuit authority exactly on point is unavailable, but all evidence supports requiring

individual detrimental reliance to be proven for misrepresentation claims under § 502(a)(2).

This Court finds that the communications to participants, and the individual participants'

consequent investment choices, are central elements of the communications claim.  These claims

are not conducive to efficient litigation on a class-wide basis.  Investment choices are highly

individualized, and thus the individual circumstances of the plaintiffs markedly differ.  See Baby

Neal, 43 F.3d at 57-58.  Furthermore, individual plaintiffs will have to prove individual losses.

"If proof of the essential elements of the cause of action requires individual treatment,

then class certification is unsuitable."  Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,

259 F.3d 154, 172 (3d Cir. 2001).  In addition, the example most relevant to this case given in the

Advisory Committee Note to Rule 23 states that certification under 23(b)(1)(b) is appropriate

when there is a breach of fiduciary duty "similarly affecting the members of a large class. . ."

The individual character of the communications claims prevents concluding that the alleged

breach has similarly affected the potential class members.[5]  As to the communications claim, the

proposed class fails to satisfy the requirements for certification under Rule 23.  As to the

communications claim, the motion for class certification will be denied.

      B.    <u>Count I: the prudence claim</u>

          1.    *The four requirements of Rule 23(a)*

As to the prudence claim, Defendants do not dispute that the proposed class meets the

numerosity and commonality requirements, but contend that the proposed class representatives

fail to meet the typicality and adequacy requirements.

          a.    Numerosity

Rule 23(a)(1) requires that a class must be "so numerous that joinder of all members is

impracticable."  "No minimum number of plaintiffs is required to maintain a suit as a class

action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs

exceeds 40, the first prong of Rule 23(a) has been met."  <u>Stewart v. Abraham</u>, 275 F.3d 220,

226-27 (3d Cir. 2001) (internal citations omitted).  Plaintiffs assert that many thousands of

employees participated in the pension plans at issue during the proposed class period.

          b.    Commonality

The second requirement under Rule 23(a) is the presence of "questions of law or fact

---

[5] This might also be considered a defect of typicality under Rule 23(a)(3).

common to the class." FED. R. CIV. P. 23(a)(2). "Commonality does not require an identity of claims or facts among class members; instead, 'the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'" Johnston v. HBO Film Mgmt., 265 F.3d 178, 184 (3d Cir. 2001) (quoting In re the Prudential Ins. Co. of Am. Sales Practice Litig., 148 F.3d 283, 310 (3d Cir. 1998)). This requirement is easily met in this case, as there are a number of questions of law or fact common to all class members, including: 1) whether Defendants were fiduciaries; 2) whether Defendants breached their fiduciary duties to Plaintiffs; 3) whether the benefit plans were injured by such breaches; and 4) whether the class is entitled to damages.

> c.      Typicality

The third requirement of Rule 23(a) is that a plaintiff must show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The Third Circuit has stated:

> In considering the typicality issue, the district court must determine whether the named plaintiff[s'] individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based. This criteria does not require that all putative class members share identical claims. Indeed, so long as the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences.

Johnston, 265 F.3d at 184.

Defendants raise two arguments regarding typicality: 1) the proposed class representatives cannot represent the class because they have no claims against any Defendant; and 2) the proposed class is atypical because it contains thousands of claims that do not belong in the case.

As to the first argument, Defendants contend that the proposed representatives have no prudence claims because they do not claim that the Plans' investments in the MCSF were imprudent.  The parties' briefs do battle by deposition quotes, and each side finds testimony from the proposed class representatives to support its position.[6]

Defendants' arguments miss the mark.  The prudence claims do not depend on any plaintiff's personal satisfaction with Merck stock as an investment.  The determination of whether Defendants breached a fiduciary duty of prudence to the Plans will not turn on the details of individual plaintiffs' subjective opinions.  This argument raises no serious challenge to the proposition that, as to the prudence claim, the proposed class representatives are typical of members of the proposed class.

As to the second argument, Defendants point to two kinds of class members who do not belong in the class: 1) Plan participants who suffered no loss but, instead, actually profited by their MCSF investments during the proposed class period; and 2) Plan participants who released their claims under ERISA.  As to the first group, Plaintiffs do not dispute that class members who did not sustain a loss should get no recovery.  Moreover, Plaintiffs agree to modify the class definition with the addition of the phrase "and were injured thereby."  (Pls.' Reply 10 n.5.)  This resolves the objection as to the first group.

As to the second group and the issue of the releases, Defendants contend that the proposed class representatives did not sign releases, and thus are not proper representatives of class members who executed releases.  Defendants provide six examples of releases.  (Ellis Decl.

_____

[6] For example, Defendants write that proposed representative Campbell testified at one point that Merck stock was a "phenomenal" investment.  (Defs.' Opp. Br. 17.)

14

Exs. A-F.)  All six are separation agreements in which the employee's release of claims is exchanged for some benefit.  Plaintiffs do not assert that the releases at issue differ substantially from the samples provided by Defendants.  Rather, Plaintiffs make two arguments: 1) an employee's release of individual claims does not release claims asserted on behalf of the Plan; and 2) ERISA prevents participants from waiving ERISA rights.  Plaintiffs offer no authority from this Circuit or even this district to support either argument.

As to Plaintiffs' argument that an individual cannot release claims asserted on behalf of the Plan, this cannot possibly be correct since it would mean that a § 502(a)(2) case could never be settled.  "A civil action may be brought . . . by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 409."  29 U.S.C. § 1132(a)(2).  Because a Plan is not empowered to bring a § 502(a)(2) action for breach of fiduciary duty, pursuant to § 409, if this Court accepted Plaintiffs' argument, Plaintiffs could initiate the action but could not settle it.  This would turn this case into an unstoppable zombie, yielding only to the lethal force of dispositive Court action.  The only appellate case Plaintiffs cite in support of their position, Bowles v. Reade, 198 F.3d 752, 760 (9th Cir. 1999), was decided pre-Larue, concerns § 502(a)(3), not (2), and is inapposite.

As to Plaintiffs' single-sentence argument that ERISA prevents participants from waiving ERISA rights, Plaintiffs do not specify the ERISA provision they rely on.  It may be 29 U.S.C. § 1110, titled "Exculpatory provisions; insurance," which states:

(a) Except as provided in sections 405(b)(1) and 405(d) [29 USCS § 1105(b)(1) and (d)], any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [29 USCS §§ 1101 et seq.] shall be void as against public policy.

15

If this is indeed the ERISA provision that Plaintiffs had in mind, this Court is not persuaded that it operates to invalidate settlement agreements. Again, as above, if Plaintiffs are correct in their interpretation, they are barred from ever settling their prudence claims. As the Second Circuit has explained, this provision bars "the waiver of a future liability," not a settlement of a past liability. Srein v. Soft Drink Workers Union, Local 812, 93 F.3d 1088, 1096 (2d Cir. 1996). Similarly, as the Eighth Circuit has explained, this provision bars use of an agreement to relieve a fiduciary of a statutory duty, not to settle a dispute over whether a fiduciary breached such a duty on a specific occasion. Leavitt v. Northwestern Bell Tel. Co., 921 F.2d 160, 161 (8th Cir. 1990). This Court has no basis to conclude that ERISA prohibits the settlement provisions at issue in the separation agreements.

This Court agrees with Defendants that the proposed class definition is overbroad in two respects. This Court concludes that the claims or defenses of the proposed class representatives would not be typical of plaintiffs who were not injured in connection with investments in Merck stock, nor would they be typical of plaintiffs who executed post-separation settlement agreements that released their claims under ERISA. The definition of the proposed class must be modified accordingly.

With the class definition so modified, this Court concludes that the typicality requirement of Rule 23 has been met, as the claims of the class representatives are typical of the proposed class: their prudence claims rely on the same theory, that Defendants breached their fiduciary duties with regard to investment in Merck stock during the class period.

        d.      Adequacy

The fourth requirement of Rule 23(a) relies on the question of whether "the representative

16

parties will fairly and adequately protect the interests of the class."   FED. R. CIV. P. 23(a)(4).

"Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified,

experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not

have interests antagonistic to those of the class."  New Directions Treatment Servs. v. City of

Reading, 490 F.3d 293, 313 (3d Cir. 2007) (quoting Wetzel v. Liberty Mut. Ins. Co., 508 F.2d

239, 247 (3d Cir. 1975)).

       Defendants do not challenge the adequacy of plaintiffs' counsel, and this Court finds that

that prong of Rule 23(a)(4) is satisfied.  Defendants raise significant questions, however, about

the adequacy, within the meaning of Rule 23(a)(4), of proposed class representative Cimato.

Defendants point to deposition testimony which indicates substantial confusion and ignorance

about basic facts of the case and his claims (e.g., Cimato Dep. 32:12-36:16, 39:4-9).  This Court

is not persuaded that Cimato can adequately protect the interests of the class, and he must be

disqualified as a class representative.  Defendants raise no concerns about the adequacy of

proposed class representatives Campbell and Smith, and this Court concludes that they meet the

requirements of Rule 23(a)(4) to qualify as class representatives.

              2.       *The requirements of Rule 23(b)(1)*

       In addition to the requirements of Rule 23(a), the proposed class must qualify for

certification under one subsection of Rule 23(b).  Plaintiffs seek certification under Rule

23(b)(1), contending that:

       prosecuting separate actions by or against individual class members would create
       a risk of:

       (A) inconsistent or varying adjudications with respect to individual class members
       that would establish incompatible standards of conduct for the party opposing the

class; or

(B) adjudications with respect to individual class members that, as a practical
matter, would be dispositive of the interests of the other members not parties to
the individual adjudications or would substantially impair or impede their ability
to protect their interests . . .

Fed. R. Civ. P. 23(b)(1).  Plaintiffs assert that the proposed class meets the requirements of either

subsection (A) or (B).  Defendants contend that class certification is not appropriate under either

subsection.

a.      Class certification under Rule 23(b)(1)(B)

Plaintiffs content that class certification is most appropriate under Rule 23(b)(1)(B).  In

opposition, Defendants argue, vaguely, that the drafters of the provision did not intend the Rule

to extend to a case like this one.  Defendants refer to the Advisory Committee Notes for the 1966

Amendments, but, as Plaintiffs contend, the instant case appears similar to one kind of case that

the notes describe: "an action which charges a breach of trust by an indenture trustee or other

fiduciary similarly affecting the members of a large class of security holders or other

beneficiaries, and which requires an accounting or like measures to restore the subject of the

trust."  Plaintiffs charge a breach of trust by a fiduciary, affecting a large class of beneficiaries,

which requires an accounting to restore the subject of the trust.  Defendants do not persuade to

the contrary.

Defendants mislead in arguing that, in Langbecker v. Elec. Data Sys. Corp., 476 F.3d

299, 318 (5th Cir. 2007), the Fifth Circuit found certification under 23(b)(1)(B) "plainly not

appropriate" for an ERISA stock drop case.  The relevant quote in full states: "a Rule 23(b)(1)(B)

limited fund class action is plainly not appropriate."  Id.  Limited fund cases are but one species

of the genus of Rule 23(b)(1)(B) cases.  See Ortiz v. Fibreboard Corp., 527 U.S. 815, 834 (1999)

(identifying limited fund cases as "[o]ne recurring type" of 23(b)(1)(B) case).  Plaintiffs do not contend that this is a limited fund case and, even if <u>Langbecker</u> were controlling authority, it would not bar certification under 23(b)(1)(B).  Moreover, it is worth noting that, while <u>Langbecker</u> certainly shows a skeptical attitude toward class certification under 23(b)(1) in an ERISA stock drop case, it did not rule on the issue.  467 F.3d at 318.

Rule 23(b)(1)(B) requires that individual adjudications of the prudence claim be dispositive of the interests of the other members or substantially impair or impede the ability of other members to protect their interests.  This is true for this case.  ERISA § 409(a) expressly empowers this Court to provide relief by removing a fiduciary.  If the prudence claims proceeded individually, and one court removed a Plan fiduciary, this would be, as a practical matter, dispositive of the interests of the other Plan members in that particular regard.  Certification is appropriate under Rule 23(b)(1)(B).

b.      Class certification under Rule 23(b)(1)(A)

Plaintiffs contend that class certification is also appropriate pursuant to Rule 23(b)(1)(A).  Defendants offer two arguments against class certification under subsection (A): 1) certification under this subsection is not appropriate when the primary relief sought is money damages; and 2) Defendants have assumed the risk of inconsistent adjudications.

As to the first argument, Defendants cite several district court cases in support of the proposition that certification under this subsection is inappropriate when the primary relief sought is money damages.  Tracing the references back to the source shows that the principal authority underlying this proposition is a 1975 Ninth Circuit case, <u>McDonnell Douglas Corp. v. United States Dist. Court for Cent. Dist.</u>, 523 F.2d 1083, 1086 (9th Cir. 1975), in which that

19

Court held: "We cannot read subdivision (b)(1)(A) so broadly that subdivision (b)(3) applies only to class actions already maintainable under subdivision (b)(1)(A)." This is a far cry from the *per se* bar against 23(b)(1)(A) money damages cases that Defendants propose. Defendants have not argued that this class should be certified under subsection 23(b)(3), and this Court declines to make such an argument for them.

Furthermore, this position inserts a requirement into 23(b)(1)(A) that is not present. The subsection requires that the varying adjudications "would establish incompatible standards of conduct for the party opposing the class." This language does not require that the varying adjudications would establish incompatible standards as the exclusive or even primary remedy. It only requires that varying adjudications would establish incompatible standards, and Plaintiffs have persuaded this Court that this requirement is met.[7] Defendants fail to persuade that a class action case principally seeking money damages, but also seeking to establish a standard of conduct for Defendants, cannot qualify under 23(b)(1)(A).

As to the second argument, the position that defendants may defeat a motion for class certification by declaring that they are willing to assume the risk of inconsistent adjudications is absurd. It costs defendants nothing to make such an offer and, if defendants could defeat class certification by it, it would be a costless and automatic strategy that would effectively render 23(b)(1)(A) useless. The Federal Rules of Civil Procedure do not give Defendants the option of waiving any requirements of Rule 23.

---

[7] As discussed above, § 409(a) authorizes courts to order "such other equitable or remedial relief as the court may deem appropriate, including removal of [the] fiduciary." If one court ordered the removal of a fiduciary, and another court enjoined that fiduciary in a particular way, incompatible standards of conduct would be established.

Defendants do not address the fact that, as Plaintiffs observe, many courts have certified classes under 23(b)(1)(A) in ERISA stock drop cases.  In his treatise on class action litigation, McLaughlin agrees:

> Classes have frequently been certified under Rule 23(b)(1)(A) in ERISA "stock drop" cases under ERISA § 502(a)(2), alleging on behalf of the plan breaches of various fiduciary duties by plan fiduciaries, principally because (b)(1)(A) focuses on the rights of the party opposing certification and the defendants' fiduciary conduct toward the proposed class usually is alleged to be uniform.

1 Joseph M. McLaughlin, McLaughlin on Class Actions § 5:5 (3d ed. 2008).[8]

Plaintiffs argue that, were class members to prosecute the prudence claims individually, it would create a risk of inconsistent adjudications that would establish incompatible standards of conduct for the fiduciaries.  This Court agrees.  Pursuing separate actions would raise a substantial risk that different courts would reach inconsistent conclusions about the standards of conduct for the fiduciaries, and that different courts might order conflicting injunctive or other remedies.[9]

The risk of establishing inconsistent standards under ERISA is particularly strong where, as here, a central element of the prudence claims is not an individual matter: the fiduciary duties are owed to the plan.  Plaintiffs do not claim that Defendants owed fiduciary duties to individual participants in the plan, but to the plan itself.  A Court adjudicating a suit by an individual

---

[8] The Court notes that, while McLaughlin acknowledges that this is the majority view, he believes that the sounder view is that 23(b)(1)(A) does not encompass suits principally seeking monetary damages.  Id.  As just discussed, this Court disagrees.

[9] Furthermore, Defendants argue that participants have an interest in advocating diverse dates on which Merck stock became an imprudent investment.  If this is so, pursuing separate actions would raise a substantial risk that courts would reach inconsistent conclusions on this key question.

plaintiff would determine the issues of the existence of the fiduciary duty and its breach not in relation to the individual plaintiff, but in relation to the entire plan.  The language of 29 U.S.C. § 1109 makes clear that the liability of the fiduciary is to the plan, and that a fiduciary found liable for damages due to a breach must reimburse the plan.  Thus the Supreme Court stated: "Section 502(a)(2) provides for suits to enforce the liability-creating provisions of § 409, concerning breaches of fiduciary duties that harm *plans*."  Larue, 128 S. Ct. 1023 (italics added).  This produces a significant risk that separate actions would establish differing standards for the duty under ERISA owed by a fiduciary to the plan.  Plaintiffs have shown that, as to the prudence claim, class certification under Rule 23(b)(1)(A) is proper.

Defendants contend on several grounds that individual issues of prudence prevent class certification.[10]  First, Defendants contend that many Plan participants would have objected to the withdrawal of the MCSF as a Plan option.  This is a variant of the argument, already discussed and rejected, that confuses prudence with individual plaintiffs' subjective opinions.  The two are different.

Defendants next argue that certification is precluded by the availability to Defendants of the ERISA § 404(c) defense, which would require highly individualized determinations.  In pertinent part, § 404(c) states: "no person who is otherwise a fiduciary shall be liable under this part [29 USCS §§ 1101 et seq.] for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control."  29 U.S.C. § 1104(c)(1)(A)(ii).

---

[10] Plaintiffs counter that the position that individual issues preclude certification raises problems of typicality, pursuant to Rule 23(a)(3), rather than problems connected to the requirements of Rule 23(b)(1).  This is likely correct, yet, as this Court finds that these arguments do not succeed in defeating class certification, classifying them as relevant to one part of Rule 23 rather than another has no effect on the outcome.

In support, Defendants include a one-sentence reference to the Fifth Circuit's decision in

Langbecker, 476 F.3d at 312, which might support their position, but Defendants never explicate

the rationale for applying the reasoning of Langbecker to this case.  The Fifth Circuit's reasoning

about the interplay of § 502(a)(2), the § 404(c) defense, and the appropriateness of class

certification is quite intricate.  Id. at 310-312.  Just for starters, it turns on the Fifth Circuit's

decision not to defer to a footnote in a Department of Labor regulation regarding § 404(c).  Id. at

310-311.  Defendants' single-sentence reference does not begin to break the surface of the legal

issues, no less plumb the depths.  Defendants have failed to persuade this Court to follow

Langbecker.

As other courts have recognized, there is a problematic inconsistency in contending both

that: 1) Defendants have a viable § 404(c) defense, which would defeat the claims of the entire

class; and 2) application of that defense is highly individualized.  See, e.g., Jingdong Zhu v.

Schering Plough Corp., 2008 U.S. Dist. LEXIS 75808 at *13-*14 (D.N.J. Sept. 30, 2008).  As

the Jingdong Court noted, the § 404(c) "defense, if applicable, would presumably work to defeat

the claims of the class as a whole and would not require individualized consideration of the facts

and circumstances applicable to each Plan participant."  Id. at *14.  Accord Lively v. Dynegy,

Inc., 2007 U.S. Dist. LEXIS 14794 at *35  (S.D. Ill. Mar. 2, 2007); Rogers v. Baxter Int'l, Inc.,

2006 U.S. Dist. LEXIS 12926 at *15 (N.D. Ill. Mar. 22, 2006).  The litigation of the § 404(c)

defense is well-suited to treatment on a class-wide basis.  Use of this defense neither destroys nor

significantly impairs the finding of typicality.

Defendants make two additional arguments that individual issues preclude certification,

regarding: 1) intra-class conflicts over the date that Merck stock became an imprudent

investment; and 2) differences related to statute of limitations defenses.  Neither of these presents a substantial obstacle.

The Third Circuit applies the following standard to the "unique defense" argument against class certification:

> A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation.  We believe this standard strikes the proper balance between protecting class members from a representative who is not focused on common concerns of the class, and protecting a class representative from a defendant seeking to disqualify the representative based on a speculative defense.

Beck v. Maximus, Inc., 457 F.3d 291, 299 (3d Cir. 2006).  As to the statute of limitations defenses, Defendants have not even argued, no less persuaded, that such defenses are likely to become a major focus of the litigation.

Defendants do not articulate the legal basis for their argument about intra-class conflicts about dates, but their citations to Langbecker suggest that this is an adequacy challenge: can the proposed representatives "fairly and adequately protect the interests of the class?"  FED. R. CIV. P. 23(a)(4).  "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."  Amchem Prods. v. Windsor, 521 U.S. 591, 625 (1997).  The determination of whether a potential conflict justifies disqualification under Rule 23(a)(4) is surely, in part, a matter of magnitude.  As the Third Circuit indicated in Beck, this Court must look to see whether the conflict is major, and must strike a balance between protecting class members from a representative who might not adequately protect their interests and protecting a class representative from disqualification based on speculative conflicts with class members.  See Beck, 457 F.3d at 299.

24

Defendants point to the Peavy Report, which makes the case that class members' damages could vary depending on the date found to be the date on which MCSF became an imprudent investment, thus creating conflicts of interest over that date.  (Baron Decl. Ex. 17.) This misses the point.  The date, if any, on which Merck stock became an imprudent investment will be determined not by class majority rule, nor by arithmetic maximization of damages for the class, but by weighing the evidence relevant to fiduciary duties of prudence and their breach. Defendants have not even argued that there is likely to be any conflict between potential class members over fiduciary obligations law or the possible relevant evidence as to breach.  On this record, this Court can only conclude that the anticipated conflict is too speculative to disqualify these class representatives.  Defendants have not shown that there is any substantial issue of adequacy here, no less one that calls for denial of class certification to safeguard the interests of potential plaintiffs from intra-class conflict.

<em>3.      Merck-Medco's standing arguments</em>

Merck-Medco filed a separate brief in opposition, opposing certification with regard to the claims asserted against it, Count II and Count IV.  Because this Court has decided that, as to Count II, the motion for class certification will be denied, Merck-Medco's arguments will be considered only insofar as they concern Count IV.

Merck-Medco first contends that the proposed class representatives lack Article III standing to assert Count IV against Merck-Medco.  As to plaintiff Campbell, Merck-Medco argues that she lacks standing because she suffered no loss, and has not received deficient benefits.  As to plaintiffs Cimato and Smith, Merck-Medco argues that they lack standing because they were never employees of Merck-Medco and never participated in the Merck-Medco

25

Plan.

As to Campbell, as Plaintiffs point out, Defendants' expert, Peavy, stated that Campbell's Plan account may have sustained a loss of $616.  (Baron Decl. Ex. 17 ¶ 23.)  Thus, while Defendants argue that Campbell has sustained no injury, their submission of an expert report evidencing potential injury concedes the issue.  Campbell has averred an injury-in-fact sufficient to establish constitutional standing at this stage of the litigation.[11]  Merck-Medco also appears to contend that Campbell lacks statutory standing as well, but the argument is unclear.  ERISA § 502(a)(2) empowers participants to bring a civil action under § 409, and Merck-Medco does not contend that Campbell is not a participant within the meaning of the statute.  Statutory standing does not appear to be at issue.

C.     Counts III and IV

Plaintiffs move for class certification for Count III (failure to monitor fiduciaries) and Count IV (co-fiduciary liability), but no brief raises issues specific to either of these claims. Because, as to the communications claim, the motion for class certification will be denied, the motion for class certification as to Count III and Count IV will be granted only to the extent that these claims are predicated on the prudence claim, that is, only insofar as Plaintiffs seek to impose liability deriving from breaches of the fiduciary duty of prudence.

D.     The requirements of Rule 23(c)(1)(b)

This Court finds that, as to Count I, and Counts III and IV, insofar as they are predicated on Count I, the requirements of Rule 23(a) and Rule 23(b)(1) are met.  Rule 23(c)(1)(b) states:

---

[11] This motion for class certification comes pre-trial, and injury need only be averred, not proven, to establish constitutional standing.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

"An order that certifies a class action must define the class and the class claims, issues, or

defenses, and must appoint class counsel under Rule 23(g)."  Plaintiffs' proposed class definition

must be modified, as discussed supra, so as to exclude participants who suffered no injury as a

result of the investment in MCSF or Merck stock, as well as to exclude participants who

executed post-separation settlement agreements that released these claims under ERISA.  This

Court approves the following class definition:

> Every person, other than Defendants:
>
> 1) who was a participant in, or beneficiary of, the Merck & Co., Inc. Employee
> Savings & Security Plan, the Merck & Co., Inc. Employee Stock Purchase &
> Savings Plan, the Merck Puerto Rico Employee Savings & Security Plan and the
> Merck-Medco Managed Care, LLC 401(k) Savings Plan (collectively, the
> "Plans") at any time between October 1, 1998 and September 30, 2004; and
>
> 2) whose Plan accounts invested in the Merck Common Stock Fund and/or Merck
> common stock; and
>
> 3) who sustained a loss to his or her Plan account as a result of the investment in
> the Merck Common Stock Fund and/or Merck common stock; and
>
> 4) who has not executed a settlement agreement releasing these claims.

The class claims are Count I, and Counts III and IV, insofar as they are predicated on

Count I.  The class issues are: 1) whether Defendants breached fiduciary duties of prudence

under ERISA owed to class Plaintiffs as participants in the Plans by: a) permitting the Plans to

offer MCSF as a Plan investment option; b) permitting the Plans to invest Plan assets in the

MCSF; and c) investing MCSF assets in Merck stock; 2) if such a breach occurred, the date on

which Merck stock became an imprudent investment; 3) if such a breach occurred, whether it

caused a loss to the Plans; 4) whether Defendants breached a duty to monitor the performance of

imprudent fiduciaries, resulting in a loss to the Plans; and 5) whether any Defendant is liable for

27

a breach of fiduciary responsibility of another fiduciary, pursuant to 29 U.S.C. § 1105(a).

Cynthia Campbell and Blossom Smith are approved as class representatives.  Robert Cimato is not approved as a class representative.

Defendants have not contested Plaintiffs' proposed class counsel.  Counsel for the named Plaintiffs are designated as counsel for the class, with Izard Nobel LLP designated as Chair of the Lead Counsel Committee, and Keller Rohrback LLP, Cohen Milstein Sellers & Toll, PLLC, and Barroway Topaz Kessler Meltzer & Check, LLP designated as members of the Lead Counsel Committee.  Trujillo Rodriguez & Richards, LLC shall be designated as liaison counsel for the class.

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs' motion for class certification (Docket Entry No. 105) will be **GRANTED** in part and **DENIED** in part.  As to Count I, the motion for class certification will be granted, with the class definition modified as stated above.  As to Count II, the motion for class certification will be denied.  As to Counts III and IV, the motion for class certification is granted only to the extent that these claims are predicated on the prudence claim.


    s/ Stanley R. Chesler
Stanley R. Chesler, U.S.D.J.

Dated: February 9, 2009

28