NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE MERCK & CO., INC. SECURITIES, DERIVATIVE & "ERISA" LITIGATION | MDL No. 1658 (SRC) |
| | Civil Action No. 05-1151 (SRC) |
| | Civil Action No. 05-2369 (SRC) |
| THIS DOCUMENT RELATES TO: | |
| THE CONSOLIDATED ERISA ACTION | OPINION |

**CHESLER**, District Judge

      This matter comes before the Court upon the Motion for Judgment on the Pleadings filed by Defendants Merck & Co., Inc. ("Merck") and various current and former Merck executives, officers and/or directors[1] (collectively, the "Merck Defendants"). [docket item no. 145] Defendant Merck-Medco Managed Care, LLC ("Medco") joins in the Merck Defendants' motion. [docket item no. 146]  Defendant Edward Scolnick[2] filed his own motion for judgment on the pleadings, joining in the arguments made by the Merck Defendants. [docket item no. 148]

---

[1] The individual Merck Defendants named in the Amended Complaint are: H. Brewster Atwater, Jr., Marcia J. Avedon, Derek Birkin, Lawrence A. Bossidy, William G. Bowen, Erskine B. Bowles, Johnetta B. Cole, William M. Daley, Caroline Dorsa, Lloyd C. Elam, Charles E. Exley, Jr., Carleton S. Fiorina, Niall FitzGerald, Kenneth C. Frazier, Raymond V. Gilmartin, William B. Harrison, Jr., William N. Kelley, Judy C. Lewent, Heidi G. Miller, Bradley T. Sheares, Thomas E. Shenk, Anne M. Tatlock, Samuel O. Thier, Dennis Weatherstone, Wendell P. Weeks and Peter C. Wendell.

[2] Among other positions held at Merck during the relevant time period, Scolnick served as a Merck director and also as a member of the Management Pension Investment Committee.

The motions, which are all before the Court and deal with the same issues, will be referred to as a single motion for purposes of simplicity. The Court will refer to all Defendants collectively, unless otherwise indicated. Plaintiffs, participants in Merck Savings and Stock Ownership Plans during the Class Period of October 1, 1998 through September 30, 2004, oppose the motion. This Court has considered the submissions by the parties in connection with this motion, and pursuant to Federal Rule of Civil Procedure 78, adjudicates the motion based on the papers submitted. For the reasons discussed below, this Court denies the motion.

## I.  BACKGROUND

The facts of this ERISA class action lawsuit are well-known to the parties and, moreover, set forth at length in this Court's July 11, 2006 Opinion [docket item no. 54] on Defendants' various motions to dismiss Plaintiffs' Consolidated Amended Class Action Complaint ("Amended Complaint"). See In re Merck & Co., Inc. Sec., Derivative & ERISA Litig., No. 05-2369, 2006 WL 2050577 (D.N.J. July 11, 2006). It revolves around investment losses allegedly sustained by Plaintiffs when Merck withdrew Vioxx, its blockbuster arthritis and pain relief medication, from the market on September 30, 2004 due to results of a clinical study indicating the drug posed an increased risk of cardiovascular event (such as heart attack or stroke). The Court, in that earlier opinion, recited in detail the facts, as alleged in the Amended Complaint, relevant to Defendants' challenge to the sufficiency of the claims under Federal Rule of Civil Procedure 12(b)(6). Because this motion, brought under Rule 12(c), also challenges the sufficiency of the claims as pled in the Amended Complaint, the Court incorporates by reference its factual synopsis as set forth in Section I of the July 11, 2006 Opinion.

It suffices to state, for purposes of this Opinion's clarity, that this suit was filed by and on behalf of participants in four Merck defined contribution employee benefit pension plans identified in the July 11, 2006 Opinion as the Salaried Plan, the Hourly Plan, the Medco Plan and the Puerto Rican Plan (collectively, the "Plans").  Though Merck's Management Pension Investment Committee ("MPIC"), whose members were appointed by the Merck Board of Directors' Compensation and Benefits Committee ("CBC"), was responsible for determining which investments would be permitted in the Plans, each Plan required that one of the investment funds available under the Plan must include shares of Merck common stock.[3]  Thus, each Plan offered among its variety of investment options to participants a number of mutual funds and the Merck Common Stock Fund ("MCSF"), which invested primarily in Merck common stock.  Plaintiffs are participants who invested in the MCSF, in which Plaintiffs allege that over one billion dollars of Plan assets were invested.

Merck stock plunged 27% on September 30, 2004, the day that Merck withdrew Vioxx from the market.  The stock continued to fall, and by November 2004, the stock had fallen about 13% more.  Vioxx was the biggest drug, measured by sales, ever withdrawn from the market at that time, and the stock plunge erased about $26.8 billion in market value for Merck.  Plaintiffs, who invested in Merck stock through the Plans, charge that their losses occurred as a result of Defendants' breach of their fiduciary duty under ERISA in various ways concerning the administration of the Plans.

---

[3] After Medco was spun off from Merck on August 19, 2003, the responsibility for determining which investments to offer under the Medco Plan was shifted from the Merck MPIC to Medco's MPIC.

The Order filed with the July 11, 2006 Opinion granted in part and denied in part the Rule 12(b)(6) motions to dismiss. Among others, two claims survived the motions: the imprudent investment claim (Count I) against the MPIC Defendants and the communications claim (Count II) against Defendants Merck, Medco and the Merck Director Defendants. Over two years after the Court's ruling on those motions, Defendants once again challenge the merits of those claims, based on the facts alleged in the Amended Complaint. They assert that Third Circuit's opinion in Edgar v. Avaya, Inc., 503 F.3d 340 (3d Cir. 2007) and this Court's opinion in Graden v. Conexant Systems, Inc., 574 F.Supp.2d 456 (D.N.J. 2008), both issued subsequent to the Opinion and Order on the Rule 12(b)(6) motions to dismiss, articulated legal standards different than those applied by the Court on the motions to dismiss. The new legal standards, they contend, render the claims deficient based on the pleading itself.

Defendants filed the instant motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

II. DISCUSSION

Rule 12(c) permits a party to move for judgment on the pleadings "after the pleadings are closed – but early enough not to delay trial." Fed.R.Civ.P. 12(c). Though procedurally it applies later in a case than a Rule 12(b) motion, which may be filed in lieu of a responsive pleading, a motion brought under 12(c) for failure to state a claim upon which relief may be granted is governed by the same standard applicable to Rule 12(b)(6) motions. Turbe v. Gov't of the V.I., 938 F.2d 427, 428 (3d Cir. 1991). The Court must therefore evaluate whether the Amended Complaint pleads "enough facts to state a claim to relief that is plausible on its face." Bell Atl.

4

Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007).  Of course, the Court accepts all well-pleaded allegations as true and draws all reasonable factual inferences in favor of Plaintiffs.  Id. at 1965; Turbe, 938 F.2d at 428.  On this motion, it must determine "whether the claimant is entitled to offer evidence in support of the claims," not whether the claims will ultimately be meritorious. Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

The Court will apply this standard in evaluating whether Plaintiffs may proceed with their remaining ERISA claims.

### A. Imprudent Investment Claim

Plaintiffs assert an ERISA breach of fiduciary duty claim against the members of the MPIC for failing to invest and manage Plan assets prudently as required by ERISA.  29 U.S.C. § 1104(a)(1).  They base their claim on the theory that the MPIC Defendants knew, or should have known, that Merck stock was artificially inflated as a result of undisclosed problems and misrepresentations regarding the cardiovascular safety of Vioxx.  The sufficiency of this claim as pled must be analyzed in light of the presumption of prudence to which the actions of the MPIC Defendants, as plan fiduciaries, are entitled under Third Circuit jurisprudence.  Edgar, 503 F.3d at 347; Moench v. Robertson, 62 F.3d 553, 571 (3d Cir. 1995), cert. denied, 516 U.S. 1115 (1996). In Edgar, the Third Circuit held that the abuse of discretion standard of judicial review and its corresponding rebuttable presumption of prudence, adopted by the court in Moench, applied not just to an Employee Stock Ownership Plan ("ESOP") but to Eligible Individual Account Plans

5

("EIAPs") generally.[4] Edgar, 503 F.3d at 347.  Moench articulated the rebuttable presumption as follows:

> An ESOP fiduciary who invests plan assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision.  However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities.

Id. (quoting Moench, 62 F.3d at 571).

To assert a viable imprudent investment claim, the Amended Complaint must set forth allegations which, taken as true, could rebut the Moench presumption.  Id. at 348.  Echoing Moench, Edgar reinforced the standard for rebutting the presumption that the fiduciary acted prudently in investing in employer securities: a "plaintiff must show that the ERISA fiduciary could not have believed reasonably that continued adherence to the ESOP's direction was in keeping with the settlor's expectations of how a prudent trustee would operate."  Id. (quoting Moench, 62 F.2d at 571).   The court elaborated that to meet this standard on the pleadings, the facts alleged must depict the kind of "dire situation" at the subject company which would require plan fiduciaries to disobey plan terms to invest in company stock so that they might satisfy their prudent investment obligation to plan participants under ERISA.  Id.  Facts that could indicate that plan fiduciaries abused their discretion by continuing to invest in company stock include, as was the case in Moench, a "precipitous decline in the price of [the employer's] stock," together with allegations that plan fiduciaries knew of the stock's "impending collapse" and the conflicted status of the fiduciaries.  Id. at 348. The Edgar court added, however, that it did "not interpret

---

[4] The Edgar court reasoned that an ESOP was one of several types of pensions plans categorized by ERISA as an EIAP; both encourage investment in employer securities and therefore offer less diversification and place assets at greater risk than other ERISA plans.

6

Moench as requiring a company to be on the brink of bankruptcy" before requiring a fiduciary to deviate from plan terms. Id. at 349 n. 13.

Defendants argue that the imprudent investment claim fails on the pleadings because of the lack of allegations that (1) Merck was about to collapse or was facing a similarly severe dire situation and (2) the fiduciaries knew it. The Court finds their argument unfounded. Though it is clear from this vantage point that Merck survived the withdrawal of Vioxx from the market, the allegations in the Complaint depict a company facing a dire situation. Merck stock plunged by almost 40% following the withdrawal of Vioxx. Billions of dollars in Merck's market value evaporated. The precipitous decline in the company's stock price occurred in the midst of controversy regarding the cardiovascular risks of the drug and Merck's alleged misrepresentations about its safety. The company faced significant exposure to monetary damages claimed in product liability suits. The Amended Complaint alleges that Merck's legal liabilities for Vioxx-related injuries were estimated to be as high as $18 billion, not including potential punitive damages. The Amended Complaint also alleges that, for years before the product was ultimately withdrawn from the market, and indeed years before it was even introduced to the market, Merck knew of the possibility that the drug might be linked to cardiovascular problems. Plaintiffs allege that various studies conducted by Merck over the years it sold Vioxx reinforced the company's concerns with the cardiovascular hazards of Vioxx. Merck's marketing of the drug attracted the attention of the FDA. The Complaint further details that after rejecting an initial FDA recommendation to add to product label a warning of increased risk of a cardiovascular thrombotic event, Merck revised the label in 2002 to address the possibility of that risk. Yet, the Complaint alleges, all the while Merck continued to promote

Vioxx as safe, sales increased, and the company's stock price rose as a result.  When the product was ultimately pulled from the market, the effect on Merck's stock was severe.

These facts, taken as true, demonstrate (1) a crisis situation faced by Merck as a result of Vioxx's failure and (2) an ongoing internal discussion at Merck, combined with attention from the FDA and mounting data, that could reasonably support a conclusion that the fiduciaries knew about the potential for a significant loss of value in Merck stock should the company's safety concerns with Vioxx materialize into an adverse financial event related to the marketability of Vioxx.  Indeed, as alleged, these safety concerns ultimately led to Merck's decision to stop selling its blockbuster product.  The Court finds now, as it did on Defendants' motion to dismiss, that the facts alleged overcome the presumption and permit a finding that the fiduciaries abused their discretion by continuing to invest in company stock.

Accordingly, Defendants' motion for judgment on the imprudent investment claim based on the pleadings, pursuant to Rule 12(c), will be denied.

> **B.    Communications Claim**

ERISA requires plan fiduciaries to inform plan participants of facts material to the participants' investments and forbids them from making material misrepresentations about the risks of a fund investment.  29 U.S.C. § 1104(a); Edgar, 503 F.3d at 350; In re Unisys Sav. Plan Litig., 74 F,3d 420, 440-42 (3d Cir. 1996). "In the investment context, a misrepresentation is 'material' if there was a substantial likelihood that it would have misled a reasonable participant in making an adequately informed decision about whether to place or maintain monies in a particular fund." Edgar, 503 F.3d at 350 (quoting Unisys, 74 F.3d at 442) (internal quotations omitted).

In this case, the communications claim is based on the theory that had Defendants Merck, Medco and the Merck Director Defendants[5] told the truth about the company's concerns with the safety profile of Vioxx, Plaintiffs could have made informed decisions about investing in Merck stock and thus avoided or minimized losses. Plaintiffs aver that instead of disclosing material facts, learned in various studies, indicating that Vioxx posed an increased risk of heart attack or stroke, Merck promoted the drug aggressively. According to the Amended Complaint, these misrepresentations not only encouraged plan participants to invest in Merck stock as opposed to an appropriate alternative but also artificially inflated the value of the shares and thus caused stock to be purchased at a price that was too high.

Defendants challenge the viability of the communications claim based on what they contend is a failure to plead loss causation and damages. Citing to Edgar and this Court's opinion in Graden, Defendants argue that these essential elements are necessarily lacking from the wrongdoing alleged by Plaintiffs because, under the efficient capital markets hypothesis, had the Defendants acted as Plaintiffs claim they should have - that is, disclosed adverse information about the cardiovascular safety of Vioxx - the market would have adjusted downward immediately, giving plan fiduciaries no opportunity to sell the Plans' holdings in Merck stock at the higher, pre-disclosure price. Under this hypothesis, even assuming Plan fiduciaries had shared material information with participants, the participants would not have been able to avoid losses due to the price drop. In other words, Defendants maintain that under Edgar's loss causation principle, no loss that can be remedied by this Court can be linked to the non-

---

[5] Though the Amended Complaint asserted the communications claim against other Defendants as well, following the Court's evaluation of the Complaint on the Rule 12(b)(6) motion, only Merck, Medco and the Merck Director Defendants remain the targets of this claim.

disclosure on which the communications claim is based.

The Court finds Merck's reasoning flawed because there is a critical difference between the wrongdoing underlying the communications claim in this case and the alleged wrongdoing in Graden and Edgar. This Court dismissed ERISA communications claims on Rule 12(b)(6) motions in both Edgar and Graden based on failure to plead loss causation. Graden, 574 F.Supp.2d at 465-66; Edgar v. Avaya, Inc., No. 05-3598, 2006 WL 1084087, * 9 (D.N.J. Apr. 25, 2006), aff'd, 503 F.3d 340 (3d Cir. 2007). In both of those cases, the alleged breach of the duty to inform under ERISA committed by plan fiduciaries was a failure to disclose company problems - in Graden, a failure to inform plan participants of trouble in effecting a corporate merger and of diminished demand for the company's products and in Edgar, a failure to inform plan participants of adverse corporate developments, such as lower sales and higher costs, affecting company earnings. In this case, Plaintiffs allege that Merck actively disseminated knowingly false information, through SEC filings, press releases and public marketing, about a top-selling product that was key to the company's success. The Amended Complaint charges that these affirmative misrepresentations about the safety profile of Vioxx were intended to keep sales high, which in turn overstated the strength of the company, boosted its market value and "fostered an inaccurately rosy picture of the soundness of the Fund[s] or Merck stock as a Plan investment." (Am. Compl., ¶ 277). An ERISA communications claim which involves allegedly deliberate efforts to mislead investors is not subject to the same lack of loss causation defect inherent in a pure non-disclosure claim. Unlike the situations presented in Graden and Edgar, in which the market's assimilation of the previously withheld information and the plan participant's ability to act on the information would be simultaneous, the loss Plaintiffs allegedly incurred in

purchasing overvalued Merck stock could have been avoided had the alleged misrepresentations not been made at all.  In a non-disclosure situation, the failure to comply with the ERISA communications duty prevents the stock price from making the appropriate downward adjustment.  Because of the assumption that information would be swiftly assimilated by the market, the loss is the same whether or not the disclosure is made.  In contrast, by alleging that Defendants' misrepresentations artificially raised the price of Merck stock, Plaintiffs have alleged loss causation.  The comparator situation, in which one asks what if the misrepresentation were not made, does not result in the same conclusion that the loss would have been the same either way.  Plaintiffs could argue that had false information about Vioxx not been disseminated, the stock price would not have been so high.

       Finally, the Court notes that although Defendants primarily rely on their loss causation argument, they also raise the adequacy of the warnings made in Plan documents as a basis for judgment pursuant to Rule 12(c) on the communications claim. They argue that disclosures made in Summary Plan Descriptions about the risks inherent in investing and participants' responsibility for investigating their investment options satisfy their obligation not to misinform participants about the risks associated with investment in the MCSF.  See Edgar, 503 F.3d at 350.  This argument misses the crux of the communications claim, which is not that Defendants failed to warn of risks associated with investing in Merck stock, but rather that they misled Plan participants and deliberately understated the risk by making material misrepresentations about Vioxx.

       Therefore, the Court will deny Defendants' Rule 12(c) motion as to the communications claim also.

**III.     CONCLUSION**

For the foregoing reasons, the Court denies Defendants' motion for judgment on the pleadings. An appropriate form of Order will be filed together with this Opinion.

s/ Stanley R. Chesler<br>
STANLEY R. CHESLER<br>
United States District Judge

DATED: March 23, 2009